NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0041n.06

No. 13-3635

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JERRY S. ESTEP; AMBER ESTEP | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MANLEY DEAS KOCHALSKI, LLC | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| Defendant-Appellee. | ) | OHIO |
| | ) | |
| | ) | |

BEFORE:      SUHRHEINRICH, GIBBONS, and COOK, CIRCUIT JUDGES.

**JULIA SMITH GIBBONS, Circuit Judge.**  Two homeowners seek to use a consumer-protection statute to hold lawyers accountable for their allegedly deceptive conduct in separate foreclosure litigation.  This case involves one small aspect of Wells Fargo's effort to repossess the home of plaintiffs Jerry and Amber Estep and then to sell their home to the United States Department of Housing and Urban Development (HUD), which itself planned to resell the home to an undetermined homebuyer.  Defendant Manley Deas Kochalski (MDK), Wells Fargo's law firm, filed a state-court foreclosure action against the Esteps on Wells Fargo's behalf.  MDK subsequently sent a letter to the Esteps stating that they would be required to vacate the home unless they sought and received permission from HUD to remain in the home after its sale.  The Esteps believed the letter to be inaccurate and misleading, and they filed suit against MDK pursuant to the Fair Debt Collection Practices Act.  The district court dismissed the Esteps'

claims, holding that the statute does not extend to MDK's letter because that letter was not intended to induce payment by the Esteps. For the reasons set forth below, we affirm.

**I.**

Congress has authorized HUD to purchase certain repossessed homes and to resell those homes to qualified homebuyers. To facilitate the prompt resale of these homes, HUD generally will not purchase a home unless it is unoccupied. *See* 24 C.F.R. § 203.678. But HUD has established certain exceptions to this rule. HUD will sometimes purchase an occupied home if the occupant suffers from an illness or injury, for example, or if state laws prohibit the foreclosing bank from evicting the occupant. *See* § 203.670(b). Even these exceptions are subject to various conditions, however: The occupant must submit a timely continued-occupancy application to HUD, for example, and when HUD agrees to purchase an occupied home, the occupant generally may continue to live in the home only temporarily. *See* § 203.674.

Although a house is an asset, it is also a source of considerable expense. Until a foreclosing mortgagee is able to sell a repossessed house, the mortgagee absorbs all of the costs associated with the house. When HUD purchases a house from a mortgagee, those costs become the responsibility of the United States. HUD therefore wants to minimize the time that a repossessed house spends on the market, and the agency seeks to resolve occupancy disputes during the foreclosure process—before HUD purchases the house from the mortgagee. To that end, HUD regulations direct foreclosing mortgagees to inform occupant mortgagors of HUD's continued-occupancy requirements before the foreclosing mortgagee acquires title to the home. "At least 60 days, but not more than 90 days, before the date on which the mortgagee reasonably expects to acquire title to the property," the foreclosing mortgagee must notify both the mortgagor and the occupant (if they are separate people) that HUD might acquire the property.

*See* § 203.675(a). That notice must inform the occupant that HUD will permit the occupant to continue to live in the home only if the occupant submits a written request to HUD "within 20 days of the date of the mortgagee's notice to the occupant." § 203.675(b)(3). The mortgagee must tell the occupant that "the property must be vacated before the scheduled time of acquisition" unless the occupant submits, and HUD approves, a timely request for continued occupancy. § 203.675(b)(5).

\* \* \*

The Esteps owned and lived in a house on Murray Hill Road in Columbus, Ohio. Almost three years ago, MDK filed a mortgage foreclosure action related to that house in Ohio state court on behalf of their client, Wells Fargo. The Esteps retained counsel and answered Wells Fargo's complaint. Within several months, the parties were engaged in discovery.

The month after discovery began, MDK sent a letter to the Esteps declaring that the mortgage on their home would be foreclosed and that "ownership of the property will be transferred to Wells Fargo probably within the next 60 to 90 days." Once Wells Fargo repossessed the property, the letter stated, ownership likely would be transferred to HUD.

The letter informed the Esteps that "HUD generally requires that there be no one living in properties for which it accepts ownership unless certain conditions are met." The letter further stated that the Esteps must submit a written request to HUD within twenty days if they wished to continue to live in the property after HUD assumed ownership. MDK attached to the letter a schedule listing HUD's conditions of continued occupancy, a HUD form entitled "Request for Occupied Conveyance," a Fannie Mae "Request for Verification of Employment," and a brief notice explaining that continued occupancy of HUD properties is only temporary. The letter explained how to complete these forms and provided an address to which the forms were to be

sent. At the bottom of the letter, under the header "**IMPORTANT NOTICE**," MDK wrote: "**YOU MUST REPLY TO THE HUD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY.**"

The Esteps filed this action against MDK in federal district court one year later. The complaint alleged five violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p: (1) communicating directly with the Esteps despite having knowledge that they were represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2); (2) threatening to take action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5); (3) falsely representing that ownership of the Esteps' house would be transferred to Wells Fargo within ninety days of the date of the letter, in violation of 15 U.S.C. § 1692e(10); (4) falsely representing that the Esteps would be require to vacate their home if they did not return the enclosed documents to HUD within twenty days of the date of the letter, in violation of 15 U.S.C. § 1692e(10); and (5) threatening to take possession of the Esteps' home despite lacking that right, in violation of 15 U.S.C. § 1692f(6)(A). MDK moved to dismiss for failure to state a claim, and the district court granted the motion. The Esteps timely appealed.

## II.

The Fair Debt Collection Practices Act (FDCPA) prohibits debt collectors from using unfair practices or making deceptive representations in connection with the collection of a debt. *See* 15 U.S.C. §§ 1692c, 1692e, 1692f. The statutory language imposes two threshold criteria that limit its scope: The FDCPA regulates only the conduct of "debt collectors" and only

communications made "in connection with the collection of any debt."[1]  The question posed to

this court is whether MDK's letter to the Esteps was sent in connection with MDK's effort to

collect the Esteps' unpaid mortgage debt.  Like the district court, we conclude that it was not.

"The text of § 1692e makes clear that, to be actionable, a communication need not itself

be a collection attempt; it need only be 'connect[ed]' with one."  *Grden v. Leikin Ingber &*

*Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (alteration in original).  "But it is just as clear that

'the statute does not apply to *every* communication between a debt collector and a debtor.'"  *Id.*

(quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir. 2010)).  "[F]or a

communication to be in connection with the collection of a debt, an animating purpose of the

communication must be to induce payment by the debtor."  *Id.*; *see also Simon v. FIA Card*

*Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) ("Other circuits considering related questions have

similarly held that the FDCPA applies to litigation-related activities that do not include an

explicit demand for payment when the general purpose is to collect payment.").  This includes

communications that aim to make a separate collection attempt—including mortgage foreclosure

litigation—more likely to succeed.  *Grden*, 643 F.3d at 173; *see also Glazer v. Chase Home Fin.*

*LLC*, 704 F.3d 453, 464 (6th Cir. 2013) (holding that mortgage foreclosure is debt collection

under the FDCPA).

The "animating purposes" of the communication is a question of fact that generally is

committed to the discretion of the jurors, not the court.  *Cf. Grden*, 643 F.3d at 173 ("Thus, under

the circumstances present here, a reasonable jury could not find that an animating purpose of the

---

[1] The Esteps assert claims under §§ 1692c, 1692e, and 1692f.  Only §§ 1692c and 1692e use the phrase "in connection with the collection of any debt."  Section 1692f says "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Despite this varying language, however, the meaning is the same:  All three statutes apply only to conduct undertaken or communications made in connection with the collection of a debt.  We therefore use one common test to determine whether all three statutes govern MDK's letter.

statements was to induce payment by [the debtor].").  Because this case comes before this court on a motion to dismiss, we need not determine MDK's actual purpose when sending the letter. Rather, we ask whether it is plausible, based on the facts alleged in the complaint, that one of the purposes animating MDK's decision to send the letter was to induce payment by the Esteps.  *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

At the outset, we emphasize that there can be more than one purpose behind a communication.  It is beyond dispute that the general purpose of MDK's letter was to inform the Esteps of HUD's continued-occupancy requirements and to comply with the HUD regulations that required Wells Fargo to send the letter.  Wells Fargo intended to transfer the Esteps' home to HUD after taking possession, and the occupied-conveyance notice was a condition precedent to such a transfer.  The general purpose of MDK's letter thus was not to collect any money.  But that is not the end of our inquiry.  MDK and Wells Fargo could have had ancillary motives for sending that specific letter at that specific time.  We therefore look beyond the letter's general purpose and ask whether it is plausible that *any* animating purpose of the letter was to induce some form of payment by the Esteps.[2]

The Esteps' principal complaint is that MDK failed to comply with the HUD regulations that govern the timing and content of occupied-conveyance notices.  Failure to comply with those regulations, of course, is not itself a legitimate basis for bringing suit under the FDCPA. The FDCPA and the HUD occupied-conveyance regulations are two discrete regulatory schemes that serve distinct purposes and operate independently of one another.  But the extent to which

---

[2] *Grden* and *Gburek* ask whether an animating purpose of the communication was to induce payment by the debtor.  The word "payment" should not be interpreted too narrowly.  It includes both direct payments and payments in kind.  Thus, if the letter was intended to induce the Esteps to leave their home prematurely, and Wells Fargo would receive some financial benefit as a result of that outcome, then the letter would be sent in connection with MDK's effort to collect the debt owed to Wells Fargo.

the timing and content of MDK's letter deviated from the HUD requirements might shed light on MDK's animating purposes. We therefore must examine MDK's letter in the context of the HUD regulations to determine whether it is plausible that an animating purpose of the letter was to induce payment by the Esteps.

We begin with the issue of timing. HUD regulations require foreclosing mortgagees to send an occupied-conveyance notice not more than ninety days before the mortgagee reasonably expects to acquire title to the property. 24 C.F.R. § 203.675(a). The Esteps contend that MDK sent the letter more than ninety days before they reasonably expected Wells Fargo to acquire title.[3] Yet even if that is true, that amounts to a violation of the HUD regulation rather than the FDCPA. The Esteps have not explained how MDK's decision to send the letter prematurely could be intended to induce payment. The Esteps argue only that the premature letter *might* have been intended to permit Wells Fargo and MDK "to save the costs and time of obtaining and serving a writ of possession to have Appellants leave the property, instead of permitting Appellants to reside in the property until the confirmation of sale." The implication is that MDK hoped that if they sent the notice prematurely, the Esteps would just pack up and leave within twenty days, saving Wells Fargo the expense of removing them from their home. But it is simply implausible that a homeowner locked in foreclosure litigation with her mortgagee would pack her belongings and vacate the house upon receipt of the HUD-mandated occupied-conveyance notice, and it is concomitantly implausible that MDK sought that result when they sent the letter. We therefore cannot accept the suggestion that MDK intentionally sent the letter prematurely in an effort to convince the Esteps to leave their home.

---

[3] This allegation appears in the Esteps' brief rather than their complaint. We will overlook that error, which would provide a separate basis for rejecting their argument.

Nor are we able to conjure up a situation in which a mortgagee (or its agent) would manipulate the timing of an occupied-conveyance notice to induce a mortgagor to pay the outstanding mortgage debt. At most, a premature occupied-conveyance notice is likely to cause the recipient to submit her occupied-conveyance application to HUD prematurely. It is not at all clear how that might benefit the mortgagee. It is therefore implausible that the decision to send a premature occupied-conveyance notice would be animated by an intent to induce payment of the outstanding mortgage debt or to provoke some other action beneficial to the mortgagee, and failure to comply with the HUD regulations governing the timing of the occupied-conveyance notice thus does not subject a mortgagee or its agents to liability under the FDCPA.

The Esteps' timeliness challenge amounts to a quibble with the reasonableness of MDK's assessment of the date on which Wells Fargo would acquire title to their property. But the FDCPA is not the proper vehicle for homeowners to challenge the reasonableness of that expectation. The HUD regulations commit that decision to the discretion of the foreclosing mortgagee and its agents, *see* 24 C.F.R. § 203.675(a), and any challenge to the reasonableness of the mortgagee's assessment should not be brought under the FDCPA.

On the other hand, a foreclosing mortgagee—or a law firm acting on the mortgagee's behalf—might include certain *content* in an occupied-conveyance notice to induce payment of the outstanding mortgage debt. The mortgagee might simply add language insisting on payment, for example, or offering an incentive to settle the foreclosure litigation. *Cf. Gburek*, 614 F.3d at 385 (stating that § 1692e applies to "a communication made specifically to induce the debtor to settle her debt"). Or the notice might include more subtle attempts to influence the homeowner's behavior vis-à-vis the mortgagee.

Nothing in MDK's letter, however, can be construed as an attempt to induce some sort of payment by the Esteps. The Esteps point to two discrepancies between MDK's letter and the form notice provided in HUD Handbook 4330.1 Rev-5, Administration of Insured Home Mortgages, § 9-11 & app. 40 (1994), *available at* http://portal.hud.gov/hudportal/HUD?src=/ program_offices/administration/hudclips/handbooks/hsgh/4330.1. Both discrepancies consist of omissions from rather than additions to the form notice, however, and neither discrepancy supports the inference that MDK sought to use the notice to induce payment.

The HUD Handbook requires foreclosing mortgagees to include the following disclaimer at the end of an occupied-conveyance notice:

> YOU MUST REPLY TO THE HUD FIELD OFFICE IN WRITING WITHIN THE NEXT 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY BEFORE HUD BECOMES OWNER OF THE PROPERTY.

*See id.* MDK's letter to the Esteps omitted the last seven words of the disclaimer as well as the words "field" and "the next." The Esteps contend that the omissions change the notice's meaning and demonstrate that an animating purpose of the letter was to induce payment. We reject that allegation. Although the disclaimer in MDK's letter did not mirror the language in the HUD Handbook, MDK's omissions do not demonstrate an intent to induce payment by the Esteps. The omission of the words "field" and "the next" has no effect whatsoever. MDK's letter still makes clear that the Esteps should return their occupied-conveyance forms to HUD within twenty days.[4] Nor was the omission of the words "before HUD becomes owner of the property" likely to induce some action that the Esteps otherwise would not have taken. That omission does not change the letter's general meaning. With or without the last seven words of

---

[4] MDK's letter provided HUD's mailing address, and the Esteps do not allege that MDK provided the incorrect address.

the disclaimer, the letter clearly states that HUD will require the Esteps to vacate the home upon the transfer of title unless they submit a continued-occupancy application to HUD within twenty days. It is therefore implausible that MDK manipulated the language of the disclaimer to provoke a desired response.

MDK notes one other discrepancy. Homeowners are sometimes eligible to remain in their homes after HUD takes possession if the homeowner suffers from an illness or injury. The form notice provided in the HUD Handbook includes a two-sentence paragraph that explains what information an applicant must provide to HUD to be eligible for this relief. *See id.* MDK's letter included the first sentence of this paragraph but omitted the second. The Esteps suggest that MDK omitted that sentence to sabotage the Esteps' application for relief. We think not. The Esteps do not claim to suffer from an illness or injury, so it's implausible that MDK made a calculated decision to omit the sentence in order to harm the Esteps. And in all events, an attempt to sabotage a HUD application is not an attempt to induce payment.

In sum, we reject as implausible the suggestion that an animating purpose of MDK's occupied-conveyance notice was to induce payment by the Esteps. The only purpose that plausibly could have animated MDK's decision to send the notice was to inform the Esteps of their obligation to submit a timely application to HUD if they wished to continue to reside in their house beyond the date on which ownership transferred to Wells Fargo. *Cf. Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir. 1998) (holding that the communication was not made in connection with the collection of a debt because it merely described the status of the debtor's account and the consequences of missing future payments). Nothing in MDK's occupied-conveyance notice can be interpreted to induce payment, nor can that letter be interpreted as an effort to make MDK and Wells Fargo more likely to succeed in the foreclosure

action.  Accordingly, MDK's occupied-conveyance notice was not sent in connection with the

collection of a debt, and the FDCPA does not govern the letter's content.

**III.**

For these reasons, the decision of the district court is affirmed.