NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0447n.06

Case No. 16-4763

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TINA TODARO, | ) | |
| | ) | **FILED**<br>Jul 28, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| REIMER, ARNOVITZ, CHERNEK & | ) | OHIO |
| JEFFREY CO., L.P.A.; DOUGLAS | ) | |
| HAESSIG, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: MOORE, STRANCH, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff-Appellant, Tina Todaro, appeals the district court's grant of Defendants' motion to dismiss her claims under the Fair Debt Collection Practices Act ("FDCPA") and for abuse of process. For the reasons that follow, we **AFFIRM**.

I.

In April 2010, Huntington National Bank ("Huntington Bank") became the holder of Ms. Todaro's mortgage loan. In August 2014, Ms. Todaro stopped making her mortgage payments. As a result, Defendants, the law firm of Reimer, Arnovitz, Chernek, & Jeffrey ("the Reimer

Firm"),[1] as representatives of Huntington Bank, instituted foreclosure proceedings against Ms. Todaro on February 5, 2015. The complaint in the foreclosure action acknowledged that Ms. Todaro had filed a petition for bankruptcy and, therefore, only sought possession of Ms. Todaro's home. On August 13, 2015, the Magistrate Judge in the Court of Common Pleas found that Ms. Todaro owed $116,824.41 plus interest from August 1, 2014, but that her debt had been discharged by her filing for bankruptcy. The judge ultimately ordered that Ms. Todaro's home be sold by the Sheriff, that the proceeds of the sale be remitted to Huntington Bank, after the payment of Defendants' fees and taxes, and that a writ of possession be issued to the purchaser.

On September 24, 2015, Defendants sent Ms. Todaro a letter which was titled "Notice to Occupant of Pending Acquisition." This letter, a requirement under the Housing and Urban Development ("HUD") regulatory scheme, purported to provide notice that the title to the property was expected to transfer to Huntington Bank within sixty to ninety days, after which ownership of the property would be transferred to the Secretary of HUD (hereinafter, "the HUD letter"). Defendants, however, did not identify themselves as debt collectors in the HUD letter, nor did they state that any information provided would be used for the purpose of debt collection.

At a Sheriff's sale on November 16, 2015, Huntington Bank purchased Ms. Todaro's home for $32,000, and the sale was confirmed on December 26, 2015. The Reimer Firm sent Ms. Todaro a Notice to Vacate Property on January 5, 2016. Ms. Todaro, instead, requested a stay of execution of the writ of possession in the Court of Common Pleas, which was granted for ninety days beginning on February 17, 2016. Notwithstanding the stay of execution, Defendants left a Notice to Leave Premises on Ms. Todaro's door on February 29, 2016, informing her that she had to vacate the property before March 3, 2016.

---

[1] Plaintiff also names Douglas Haessig as an individual Defendant in her complaint. Defendant Haessig is a member of the Reimer Firm, and is alleged to have been acting within the scope of his agency for the Reimer Firm. As such, all references to Defendants or the Reimer Firm in this opinion also includes Defendant Haessig.

When Ms. Todaro still did not leave her home, Defendants, on March 7, 2016, filed an eviction action for forcible entry and detainer in the Garfield Heights Municipal Court. The Municipal Court ordered Defendants to show cause why the eviction action should proceed despite the stay issued by the Court of Common Pleas. Defendants responded that Ms. Todaro "had ample time to relocate as she had over a year to vacate since the foreclosure was initiated and had not made a payment on the property since August 2014." (R. 10, PageID # 77.) According to Ms. Todaro, she was hospitalized because of the increased stress from speeding up her move out, increased anxiousness, and the embarrassment from the public notice placed on the door of her home. Ms. Todaro further alleges that after the Municipal Court allowed the case to proceed to trial, she was forced to leave the hospital before her treatment was complete in order to appear for trial. Ultimately, the Municipal Court found that it was without jurisdiction to decide the eviction proceeding in light of the stay issued by the Court of Common Pleas, and dismissed the action.

After the eviction proceedings were dismissed, Defendants apologized to Ms. Todaro and stated that they would not try to evict her until the stay was lifted. On April, 26, 2016, Ms. Todaro sought, and was granted, an additional ninety-day stay of the writ of possession. The Court of Common Pleas expressed its displeasure with Defendants' attempt to circumvent its original stay. Ms. Todaro further asserts that despite the Sheriff's sale in November 2016, Huntington Bank continued in its efforts to collect debt that it claimed survived transfer of the collateral. Particularly, Huntington Bank issued a 1099-A for the 2015 year, which stated that Ms. Todaro owed $116,824.41 on the home, and remained personally liable for the amount. According to Ms. Todaro, Huntington Bank repeatedly issued mortgage statements, stating that she owed $28,844.45 for the missed mortgage payments.

On June 15, 2016, Ms. Todaro filed a complaint against Defendants in district court, alleging violations of the FDCPA and abuse of process. The district court granted Defendants' motion to dismiss, holding that the FDCPA does not apply to Ms. Todaro's claims because there was no debt at issue in this eviction action, and because none of the communications from Defendants were sent with the purpose of collecting a debt. As to the abuse of process claim, the district court held that Ms. Todaro failed to allege a willful act beyond the filing of the eviction complaint.

## II.

We review a district court's dismissal of a complaint for failure to state a claim de novo. *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 858 (6th Cir. 2017). "We 'accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs.'" *Id*. (quoting *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010)).

## III.

On appeal, Ms. Todaro reasserts both of the claims raised before the district court. We address them in turn.

***Violations of the FDCPA.*** Ms. Todaro argues that the district court erred in finding that the FDCPA does not apply to her claims based on its conclusion that she is not a "consumer," as contemplated by the FDCPA, and that Defendants are not "debt collectors." Ms. Todaro also takes issue with the district court's conclusion that the communications sent by Defendants were not sent with the purpose of collecting a debt, and that the mortgage statements sent by Huntington Bank could not be imputed to Defendants.

We have previously noted that "[t]he FDCPA was enacted to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting 15 U.S.C. § 1692(e)). "The statutory language imposes two threshold criteria that limit its scope: The FDCPA regulates only the conduct of 'debt collectors' and only communications made 'in connection with the collection of any debt.'" *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014). It is clear from this that "debt collection" is paramount to the application of the FDCPA. Ms. Todaro relies heavily on our decision in *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013). In that case, we held that mortgage foreclosure is debt collection under the FDCPA, and that lawyers who engage in debt collection must comply with the FDCPA when engaged in mortgage foreclosure. *Id*. at 464. Ms. Todaro's reliance on *Glazer*, however, ignores an important distinction. As the district court found, Ms. Todaro's complaint only challenges Defendants' behavior as it related to the eviction proceedings, all of which happened *after* the foreclosure action had been completed. This distinction necessarily requires different considerations.

All the district courts that have addressed this distinction within this Circuit have held that the FDCPA does not apply to post-foreclosure eviction proceedings. *See Bobo v. Trott & Trott, P.C.*, No. 13-14696, 2014 WL 555201, at *2 (E.D. Mich. Feb. 12, 2014); *Bond v. U.S. Bank Nat'l Ass'n*, No. 09-14541, 2010 WL 1265852, at *5 (E.D. Mich. Mar. 29, 2010); *Burks v. Wash. Mut. Bank*, No. 07-13693, 2008 WL 4966656, at *9 (E.D. Mich. Nov. 17, 2008). The reasoning behind this finding is that at the point of eviction, the debt collection process has ended and the plaintiff in an eviction action is seeking possession of the property rather than monetary damages. *Bond*, 2010 WL 1265852, at * 5. It is difficult to disagree with this reasoning. Where the debt has been extinguished in a foreclosure sale, as was the case here,

there no longer exists a debt to enforce and any post-foreclosure activity cannot be considered debt collection covered by the FDCPA.

Ms. Todaro attempts to distinguish these cases by arguing that all these cases involve non-judicial foreclosures, which is allowed under Michigan law, as opposed to the judicial foreclosures required by Ohio. Initially, it does not appear that Ms. Todaro properly raised this argument before the district court.[2] While Ms. Todaro argued in her response to Defendants' motion to dismiss that their supporting authority involved Michigan law, she did not make the distinctive argument that she makes here. Regardless, the distinction between judicial and non-judicial foreclosures that Ms. Todaro relies on here does not bear the weight that she places on it. The reasoning is the same; because the conduct of which Ms. Todaro complains was taken after the conclusion of the foreclosure proceedings, after Ms. Todaro's home had been sold in a Sheriff's sale, and after any debt had been extinguished, it was not debt collection and, therefore, does not fall within the bounds of the FDCPA.[3]

As additional evidence that the FDCPA applies to her claims, Ms. Todaro points to Huntington Bank's conduct in sending her mortgage statements and the 1099-A form. Ms. Todaro urges this Court to infer that Defendants knew of Huntington Bank's attempt to collect on the debt even after the foreclosure and Sheriff's sale and to impute this conduct to Defendants based on their longstanding and continuing attorney-client relationship with Huntington Bank. The district court refused to make this leap, concluding that the conduct of Huntington Bank

---

[2] "[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (citation omitted).

[3] Ms. Todaro also appears to argue that Defendants' motive in sending the HUD letter and seeking her early eviction was indirectly an attempt to collect a debt because Defendants sought to evict her so that Huntington Bank could receive payment from the Federal Housing Administration, her mortgage insurance holder. While these assertions are certainly plausible, they nonetheless stretch the bounds of the FDCPA. As we have previously held, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by *the debtor*." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (emphasis added). Ms. Todaro does not, and cannot, allege that any attempt here was to induce payment from her.

cannot be imputed to Defendants. We agree. While it is common practice to impute the actions of counsel to the parties they represent, the reverse has never been the case. Ms. Todaro cites no case law that allows us to reach this conclusion, and we can find none. *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("[T]here is no legal authority for the proposition that an attorney is generally liable for the actions of his client.").

In short, Ms. Todaro cannot make out a claim for a violation of the FDCPA and the district court properly dismissed this claim.

***Abuse of Process.*** Ms. Todaro next argues that she pled sufficient facts to state a claim for abuse of process under Ohio law. In the alternative, Ms. Todaro argues that she has stated a claim for malicious civil prosecution. The claim concerns Defendants' institution of the eviction action in the Municipal Court despite the stay that had previously been entered in the Court of Common Pleas.

In Ohio, a plaintiff seeking to bring an abuse of process claim must show: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *PNH, Inc. v. Alfa Laval Flow, Inc.*, 958 N.E.2d 120, 128 (Ohio 2011) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994)). The district court agreed with Defendants that Ms. Todaro's allegation that this case was filed with probable cause, as is required by the first element, is contradicted by Ms. Todaro's other allegations that the eviction action was unlawful due to the stay issued in the Court of Common Pleas. Ms. Todaro now argues that this finding ignores her right to plead alternative or inconsistent claims under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2)–(3).

Ms. Todaro's abuse of process claim fails regardless. Based on the facts alleged in the complaint, Ms. Todaro cannot meet the second element of an abuse of process claim. "In an abuse of process case, 'the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself . . . by the use of the process as a threat or a club.' Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *PNH, Inc.*, 958 N.E.2d at 128 (internal citation and alteration omitted) (quoting *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (1996)). Here, Defendants instituted eviction proceedings against Ms. Todaro in the Municipal Court in order to immediately evict her. There is no indication that Defendants were using the eviction action as a "threat" to get Ms. Todaro to do something other than leave her home, and the outcome that Defendants desired, eviction, was within the court's power to order. As such, this claim fails.

As to Ms. Todaro's claim that she has alternatively pled a claim for malicious civil prosecution, we note that this argument was raised for the first time on appeal. The district court did not address this argument, and Ms. Todaro has forfeited this argument. *See Vance*, 546 F.3d at 781.

IV.

For the reasons above, we **AFFIRM**.