154 F.3d 384
 Clifford BAILEY and April Bailey, individually and on behalf
of all others similarly situated, Plaintiffs-Appellants,
v.
SECURITY NATIONAL SERVICING CORPORATION, an Alaska
corporation, and Wendover Funding, Incorporated, a
North Carolina corporation, Defendants-Appellees.
 No. 97-3437.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 17, 1998.
Decided Aug. 19, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Sept.
25, 1998.
 
 David J. Philipps (argued), Michael S. Hilicki, Beeler, Schad & Diamond, Chicago, IL, for Clifford Bailey.
 Michael S. Hilicki, Beeler, Schad & Diamond, Chicago, IL, for April Bailey.
 Richard L. Fenton (argued), Steven M. Levy, Mary L. Mills, Sonnenschein, Nath & Rosenthal, Thomas W. Engelhardt, McCullough, Campbell & Lane, Chicago, IL, for Security Nat. Servicing Corp.
 Thomas W. Engelhardt, McCullough, Campbell & Lane, Chicago, IL, Margaret K. Savage (argued), Briggs & Morgan, Minneapolis, MN, for Wendover Funding, Inc.
 Before CUMMINGS, BAUER, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 We must decide whether the defendants (mortgage service providers) violated the technical strictures of the Fair Debt Collection Practices Act in their communications with April and Clifford Bailey, who initially defaulted on their home mortgage loan but later negotiated a forbearance agreement which gave them a fresh start. The district court granted summary judgment to the defendants after concluding that they were not subject to the Act because they were not demanding payment on a defaulted loan, but rather were servicing a current payment plan, or forbearance agreement, executed between the Baileys and the Department of Housing and Urban Development. We affirm.
 
 I.
 
 2
 Clifford and April Bailey bought a home in 1984 with a mortgage loan guaranteed by HUD. But by 1991 they had fallen behind on their payments and soon afterward went into default. Because of the default, the loan was assigned to HUD in 1992. From 1992 to 1995, the Baileys and HUD entered into a series of payment plans, or forbearance agreements, so that the Baileys could try to bring their loan up to date. Each agreement or payment plan stated that while the "original note" remained in default, the forbearance agreement "temporarily supersede[d]" it. Under the forbearance payment plan, the Baileys paid HUD $551.00 each month.
 
 
 3
 In late 1995, HUD grouped the Baileys' loan under the forbearance agreement with other loans it held into portfolios and auctioned them to private investors. HUD sold the portfolio containing the Baileys' loan (and about 2,000 other loans) to BCGS, L.L.C., which in turn hired the defendants, Wendover and Security National, to service these loans. Servicing a loan like the Baileys' means that the defendants were responsible for sending out monthly statements, collecting mortgage payments and notifying borrowers of accounts payable. On January 4, 1996, Security and Wendover sent the Baileys a letter that listed the next four payments due (the first of which was due seven days from the date of the letter). The letter did not contain any of the Fair Debt Collection Practices Act's required notices, but instead stated:
 
 
 4
 We wish to work with you on the resolution of your delinquency and will allow you to continue to make the payments remaining under this agreement. However, sending less than the forbearance payment amount and late payment of your monthly installment may render this agreement null and void requiring immediate payment in full of all sums due under the terms of your Note.
 
 
 5
 The Baileys responded to this letter by filing a class action complaint against Security and Wendover. The Baileys claimed that the letter did not comply with the FDCPA. Specifically, it did not inform the Baileys that they could obtain verification of the amount of their debt by requesting it in writing within 30 days. 15 U.S.C. § 1692g. Nor did it disclose that the defendants were attempting to collect a debt and that any information obtained would be used for that purpose. 15 U.S.C. § 1692e(11). Security and Wendover moved for summary judgment on the basis that they were not "debt collectors" (as that term is defined by the Act) with respect to the Baileys' loan. They also argued that even if they were debt collectors, the letters they sent to the Baileys were not the type of communications covered by the FDCPA. The district court agreed with both arguments and granted summary judgment to Wendover and Security.
 
 II.
 
 6
 The only issues on appeal are whether Wendover and Security are "debt collectors" under the FDCPA, and, if they are, whether their communications complied with the strictures of the Act. The Act defines "debt collector" as:
 
 
 7
 (6) ... any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... The term does not include--
 
 
 8
 * * *
 
 
 9
 (F) any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person.
 
 
 10
 15 U.S.C. § 1692(a) (emphasis added).
 
 
 11
 Wendover and Security argue that they fall within the exception contained in subsection (F). Specifically, they argue they are not debt collectors because their activities in this case concern the collection of an obligation not in default--but instead subject to an ongoing forbearance agreement--at the time they obtained it. The plaintiffs counter this principally by citing language used by HUD in its forbearance agreement: "In return for [HUD] not foreclosing on my mortgage which is still in default under the original note, I agree to the following terms and conditions." (Emphasis added.)
 
 
 12
 Like all cases involving statutory interpretation (here, § 1692a(6)(F)), our first task is to determine if the language Congress wrote resolves the issue before us. "Where the statute's language is plain, the court's function is to enforce it according to its terms." Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 680 (7th Cir.1997). The plain language of § 1692a(6)(F) tells us that an individual is not a "debt collector" subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it.
 
 
 13
 Of course a debtor may be in default of some debts and not others (default, unlike bankruptcy, is not a condition that permeates all of one's financial obligations). That is what happened in this case--the Baileys defaulted on their original note but then had it superseded by a renegotiated payment plan executed with HUD in which they owed a different monthly premium (perhaps not less than their original one because of accumulating late fees or penalties). The advantage of these renegotiated plans is quite clear--the creditor wins because he believes he'll be better off restructuring the loan obligation and perhaps even entering into an entirely new agreement rather than litigating or pursuing the typical remedies available to him by virtue of a default (acceleration, foreclosure, etc.). The debtor wins because in a sense his slate (and the previous default) is wiped clean under the terms of the new agreement so long as he stays current on his new obligations.
 
 
 14
 Whatever the motivations, all of them undoubtedly sensible, for our purposes it is important only that debtors such as the Baileys end up with two agreements (the original one and the superseding forbearance agreement), making it important which one a creditor or his mortgage servicer seeks to collect. If he seeks to collect on the original note technically remaining in default--meaning it's revived because the debtor defaulted again under the new agreement--then he is a "debt collector" under the Act so long as the debt was in default at the time he obtained or purchased it. If on the other hand he seeks to collect on payments currently due under the new superseding agreement then he is not a "debt collector" under the Act (but more akin to a credit card company sending out monthly statements to its customers) because the debtor is not in default under that agreement. One more "if" might help: if we did not make this common-sense distinction between defaulted agreements and superseding agreements not in default, we would be ignoring the terms and the parties' undoubted purpose behind the new payment plans by saying that a debtor in default can never have his slate wiped clean or given a last chance to become credit-worthy under a new plan. We also would be saying that a mortgage servicer like Wendover (or Security) is a debt collector that is subject to the hyper-technical requirements of the Act no matter how far down the line it is hired to service a debt that superseded a debt previously in default (perhaps many years earlier as mortgages typically last that long).
 
 
 15
 Common sense and the plain meaning of the statute require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current. As we noted earlier, in the January 4, 1996 letter Wendover and Security informed the Baileys that they owed $551.00 by January 11 (the letter also details the due dates of upcoming payments, through April, the last month under the forbearance agreement). The letter specifically notes that the $551.00 is owed under the Baileys' "forbearance agreement," not their original note, and that Wendover and Security wanted "to work with" the Baileys in making payments "under this agreement." (Emphasis added.) In addition, the letter specifically refers to the amount due as the "forbearance payment amount." The $551.00 amount is exactly what's owed under the forbearance agreement. And if Wendover and Security had tried to collect a different amount--perhaps the amount owed under the original loan in default--surely the Baileys would have (correctly) pointed to the terms in the superseding forbearance agreement. This answers the question posed earlier (which debt did Wendover and Security seek to collect--the debt in default or the debt owed under the forbearance agreement?). They sought to collect the debt under the forbearance agreement, which both parties agree was not in arrears at the time the defendants obtained it (and obviously not in default). Because the debt under the forbearance agreement pursued by Wendover and Security was not in default, the district court was correct that they were not "debt collectors" and thus not subject to the requirements of the Act.
 
 
 16
 In effect the defaulted note is at least temporarily displaced by the subsequent (renegotiated) forbearance agreement. It is that agreement that is the object of the Wendover letter. It is essential that we make this distinction. Otherwise the Baileys' default could never be superseded by a new payment plan, even one that clearly benefitted both parties at the time it was executed. For the reasons expressed above, we decline to remove that distinction. And it is somewhat surprising that the Baileys would want us to. Surely they benefitted from the renegotiated plan, and so their argument that their default never went away and continues to haunt them is curious if not counter-intuitive. It is even questionable that there are more than 100 other debtors (they have filed a class action attesting to that number) who similarly received second chances and yet still want to sue mortgage service agencies (like Wendover and Security) for neglecting to say in monthly statements that they are collecting a debt subject to verification by the debtor. And what would the verification accomplish? Only that the Baileys owed the same amount ($551.00) that they always owed under the agreement, an amount they previously paid without comment.
 
 
 17
 Congress allowed for class actions under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B). No doubt some flagrant abuses by debt collectors are held in check by the collective effort of those who are abused. But the law can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme. Indeed, our case marks the third instance in the past year that the Baileys' lawyers have appealed the dismissal of a class action under the FDCPA for technical violations of the statute. See Berman v. GC Services Limited Partnership, 146 F.3d 482 (7th Cir.1998) (affirming dismissal of class action complaining that defendants' letters--which sought unemployment insurance contributions--failed to comply with notice requirements under the FDCPA); Jang v. A.M. Miller & Assoc., 122 F.3d 480, 484 (7th Cir.1997) (affirming dismissal of class action, which complained that defendants' letters were false and deceptive even though the "letters tracked the required statutory language nearly verbatim"). Class actions can benefit plaintiffs by getting a lawyer interested in taking on what individually comes close to a small claims case (no more than $1000 for each transgression, see 15 U.S.C. § 1692k(a)(2)(A)), but litigation is costly to all concerned and uses judicial resources as well. The law would be best served by challenging clear violations rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall for the attorney. In this case a class was formed, ostensibly to create the impression that numerous minute violations banded together stand for far more than they would apart. It was a class not certified by the district court because the judge, with summary judgment motions looming, was uncertain whether it would be necessary. It was not.
 
 
 18
 It is worth noting that the plaintiffs lose for a different reason, too. Under the law only communications "in connection with the collection of any debt" (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the defendants' letters cannot reasonably be placed in that category. The important letter dated January 4 does not "demand" any payment whatsoever, but merely informs the Baileys about "the current status" of their account. The due dates listed in the letter are all prospective. Surely this is not the type of dunning letter that describes a communication related to "the collection" of a debt. Chief Judge Posner drafted a prototypical (and lawful) dunning letter in Bartlett v. Heibl, 128 F.3d 497, 501 (7th Cir.1997), which we promised would create a safe haven for debt collectors, at least in this circuit. That letter demands an overdue credit card balance; the letter in our case demands nothing, and doesn't even imply that anything owed under the Baileys' forbearance agreement is overdue. At most the letter contains a warning that a failure to pay the monthly installments (in other words, default a second time) will mean that the forbearance agreement becomes null and void, resulting in acceleration. A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed. All of which demonstrates part of the irony in the Baileys' case--having defaulted but gotten a second chance at keeping their house and a new payment plan, the Baileys seem more interested in litigating than staying current on their mortgage. Their efforts now can turn to the latter.
 
 
 19
 AFFIRMED.