In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3776

CAMILLE GBUREK, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

LITTON LOAN SERVICING LP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-03188—**Milton I. Shadur**, *Judge.*

ARGUED APRIL 15, 2009—DECIDED JULY 27, 2010

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Litton Loan Servicing ("Litton")
serviced a mortgage on a home owned by Camille
Gburek. When Gburek fell behind on her mortgage pay-
ments, Litton sent her a letter offering to discuss ways
she could avoid losing her home in foreclosure and asking
for her current financial information. A few days later,

Gburek received a letter from Titanium Solutions ("Titanium") on behalf of Litton; this letter reiterated Litton's offer to work with Gburek on foreclosure alternatives and asked again for Gburek's financial information.

Gburek responded with this lawsuit, claiming that Litton had engaged in illegal debt-collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* The district court granted Litton's motion to dismiss, concluding that Litton's conduct did not fall within the scope of the FDCPA because the letters Gburek received did not contain a demand for payment.

We reverse. Generally speaking, a communication from a debt collector to a debtor is not covered by the FDCPA unless it is made "in connection with the collection of any debt." *Id.* §§ 1692c, 1692e. The district court thought Litton's offer to participate in loan-workout negotiations was not made "in connection with" any debt-collection efforts because it did not contain an explicit demand for payment. This reads the statutory language too narrowly and ignores salient facts alleged in the complaint: Gburek's mortgage was in default, and the text of the letters indicate they were sent to induce her to settle her mortgage-loan debt in order to avoid foreclosure. The complaint thus sufficiently alleges communications that were "sent in connection with an attempt to collect a debt," *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009), and in violation of the FDCPA.

## I. Background

Camille Gburek was in default on a mortgage loan serviced by Litton Loan Servicing. As a loan servicer, Litton was responsible for sending out monthly statements, collecting and monitoring mortgage payments, addressing late payments or other delinquencies, and notifying Gburek of her account status. In December 2007 Gburek received two letters—attached as exhibits to her complaint—that she claims violated the FDCPA. Because the letters are important to this appeal, we set forth their contents in detail.

In the first letter, Litton offered Gburek the opportunity to discuss "foreclosure alternatives" and requested certain financial information.[1] More specifically, this letter said:

> We recently sent you a letter requesting that you contact our office to review your financial situation and discuss foreclosure alternatives. To date, we have not received a response to our request.
>
> Again, we would like to emphasize that it is not too late to save your home. Options may be available

---

[1] Litton specifically requested that Gburek provide her contact information as well as extensive financial information, including her monthly income and expenses, her assets and liabilities, her most recent pay stubs and tax returns, and recent bank statements for her checking and savings accounts. Litton also asked Gburek to explain why she had defaulted on her mortgage loan and to propose ways to resolve her delinquent status.

to help preserve your homeownership. To determine options that best fit your financial situation, you must complete and return the enclosed form and provide the requested documentation to [Litton's Loss Mitigation Department] within 14 business days.

. . . .

Litton will not delay ongoing legal action on your home until your financial information has been received and processed.

If you are not obligated on the debt, or if the debt has been discharged in a bankruptcy proceeding, the Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the real estate may be affected.

Should you have any questions concerning your alternatives, do not hesitate to contact us . . . or visit our website . . . .

At the bottom of the letter, the following text appeared: "LITTON LOAN SERVICING LP IS A DEBT COLLECTOR. THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (This text also appeared on the financial-information form in bold, lowercase letters.)

A few days after Litton's letter arrived, Gburek received a letter from Titanium Solutions, a firm that partners with mortgage-loan servicers like Litton and attempts to facilitate communication between servicers and home-owners on the brink of foreclosure. Like the Litton letter,

the Titanium letter also asked Gburek to complete and return a financial-information form to Litton:

> Your Servicer has requested our company, Titanium Solutions Inc., to contact you because of certain payment arrearages on your Loan. It is our task to work together with you and your Servicer to find a way, if possible, for you to keep your home and to avoid continuing arrearages, which may lead to foreclosure. **Please note that Titanium Solutions is not a debt collector and is not involved in the collection of any of the amounts due under the Servicer's Loan. Our Titanium Solutions' representative is not authorized to accept from you any mortgage payment or any other type of payment. Please note that Titanium Solutions will not request or accept any payment from you for its services.**

> To provide this assistance, we must collect information from you to analyze your current financial position. We have enclosed a "Financial Information Form" to be filled out by you and returned to Litton Loan Servicing . . . . Your Servicer has also requested a copy of your most recent pay stub(s) and/or your most recent Federal Income Tax Return.

> . . . .

> Your Servicer and Titanium Solutions hope that this assistance program results in a mutually positive experience for everyone. If you have any questions upon completion of your interview with Titanium Solutions, please don't hesitate to call your Servicer's

Loan Workout Department . . . or Titanium Solutions
General Offices . . . .

In response to these two letters, Gburek filed a class-action lawsuit against Litton alleging three violations of the FDCPA and seeking statutory damages and attorney's fees. Count One claimed that Litton violated 15 U.S.C. § 1692e(10) by using deceptive means to obtain Gburek's personal information; this count centered on Litton's use of a third party—Titanium—to communicate with Gburek regarding the possibility of negotiating a loan workout. Count Two alleged that Litton violated § 1692c(a)(2) by communicating directly with Gburek despite knowing she was represented by an attorney. Count Three alleged that Litton violated § 1692c(b) by communicating with Titanium about Gburek's mortgage without Gburek's consent.[2]

Litton moved to dismiss the complaint, contending that the communications that formed the basis of these claims were not made "in connection with the collection of" Gburek's debt as required by 15 U.S.C. §§ 1692c(a)-(b), 1692e. In an oral decision, the district court agreed, concluding that under *Bailey v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998), a communication is made "in connection with the collection of any debt" only if it explicitly demands payment of that debt. Because Litton's communications did not expressly demand

---

[2] Counts One and Two also claimed that Litton violated 15 U.S.C. § 1692f's prohibition against using "unfair or unconscionable means to collect or attempt to collect any debt."

payment, the district court granted the motion to dismiss. Gburek appealed.

## II.  Discussion

We review the district court's dismissal order de novo, construing the complaint in the light most favorable to Gburek, accepting as true all well-pleaded facts and drawing all reasonable inferences in her favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Because the Litton and Titanium letters were attached to Gburek's complaint as exhibits, we treat them as part of the pleading. FED. R. CIV. P. 10(c).

The Fair Debt Collection Practices Act generally prohibits "debt collectors" from engaging in abusive, deceptive, or unfair debt-collection practices. 15 U.S.C. §§ 1692 *et seq.* Among other things, the FDCPA regulates when and where a debt collector may communicate with a debtor, *id.* § 1692c; restricts whom a debt collector may contact regarding a debt, *id.*; prohibits the use of harassing, oppressive, or abusive measures to collect a debt, *id.* § 1692d; and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt, *id.* §§ 1692e, 1692f. For the FDCPA to apply, however, two threshold criteria must be met. First, the defendant must qualify as a "debt collector," which the FDCPA defines as any person who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or who "regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another." *Id.* § 1692a(6). Here, the parties agree that Litton is a "debt collector" under the statute. Second, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt." *Id.* §§ 1692c(a)-(b), 1692e, 1692g. The issue in this appeal is whether the communications Gburek challenges were made in connection with the collection of her debt.

Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt. Three of our cases, however, are instructive. In *Bailey*, 154 F.3d 384, a loan servicer sent a letter to a delinquent debtor listing the next four payments due on the debtor's forbearance agreement with the original creditor and expressing a willingness to "work with" the debtor to resolve the underlying delinquency. *Id.* at 386. Although the plaintiff argued that this letter qualified as a communication in connection with the collection of the debt, we observed that it did not demand payment and did not otherwise attempt to collect the debt even though it warned the debtor that any delinquent payments on the forbearance agreement could trigger an obligation to immediately repay the entire loan. We concluded that this letter was not a communication in connection with the collection of any debt but, rather, merely a description of the current status of the debtor's account. *Id.* at 388-89.

Several factors were important to the decision in *Bailey*. First, the debtor had not missed any payments on the

forbearance agreement; although the original loan was in default, there was nothing past due on the forbearance agreement that had superseded it. Second, the payment dates listed in the letter were prospective, and the letter simply warned the debtor of the consequences of missing a future forbearance payment. Third, the letter contained no demand for payment but instead simply set forth the debtor's current account status.

*Bailey* thus suggests some limits on the reach of the FDCPA, making it clear that the statute does not apply to *every* communication between a debt collector and a debtor. The case does not, however, establish a categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt. The absence of a demand for payment was just one of several factors that influenced the outcome in *Bailey*.

Our later decision in *Horkey v. J.V.D.B. & Associates*, 333 F.3d 769 (7th Cir. 2003), also undermines the district court's conclusion that a communication must contain a demand for payment in order to qualify as a communication made in connection with the collection of any debt. In *Horkey* the debtor received a call from a debt collector at work, said she could not talk about the matter at that time, and hung up the phone. The debt collector then called the debtor's co-worker and asked him to tell the debtor "to quit being such a [expletive] bi***." *Id.* at 772. Although the phone call to the co-worker contained no demand for payment, we noted that the obvious point of the call was to "crudely but specifically"

induce the debtor "to be more receptive to his entreaties regarding the debt." *Id.* at 774. This was enough for us to conclude that the phone call to the employee was covered by the FDCPA. *Id. Horkey* clarifies that a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, that a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA.

The third case that informs our analysis is *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009). In *Ruth* a debt collector sent both a collection letter and a privacy notice to a debtor in the same envelope. Although the collection letter was undoubtedly an attempt to collect the debt, the debt collector argued that the privacy notice fell outside the scope of the FDCPA. We rejected this argument for two reasons. First, we took note of the relationship between the parties: "The only relationship the defendants had with the plaintiffs arose out of [the defendant's] ownership of the plaintiffs' defaulted debt." *Id.* at 799. Second, the privacy notice was sent in the same envelope as the collection letter, which the defendants conceded constituted an attempt to collect a debt. We concluded in *Ruth* that "the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt," and thus the privacy notice was sent "in connection with an attempt to collect a debt." *Id.* at 798-99.

Together, these cases establish that the absence of a demand for payment is just one of several factors that

come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt. The nature of the parties' relationship is also relevant, as illustrated by both *Ruth* and *Bailey*. We commented in *Ruth* that "[t]he only relationship the defendants had with the plaintiffs arose out of . . . the plaintiffs' defaulted debt," *id.* at 799, and found it significant in *Bailey* that there was a preexisting forbearance agreement in place. As was implicit in all three cases, the purpose and context of the communications—viewed objectively—are important factors as well. *Id.* at 798 (holding that the standard for evaluating whether a communication is made in connection with the collection of a debt is an objective one). We emphasized in *Ruth* that the privacy notice was sent in the same envelope as a collection letter, and when packaged together in this way constituted a communication "sent in connection with an attempt to collect a debt." *Id.* at 798-99. Likewise, in *Horkey* we relied on the apparent purpose of the debt collector's telephone call—to threaten and harass the debtor into settling her debt—to conclude that it was a communication made in connection with the collection of the debt.

Applying these principles here, we note first that Gburek's complaint centers on three separate communications that she alleges violated the FDCPA: (1) Litton's letter telling Gburek that she could avoid foreclosure if she submitted certain financial information; (2) Titanium's letter to Gburek encouraging her to contact Litton and attempting to collect the previously requested financial information; and (3) Litton's contact with Titanium

about Gburek's debt. We emphasized in *Ruth* that "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Id.* at 798. *Ruth* was a summary-judgment case, however, and we resolved the question in the plaintiff's favor as a matter of law on the undisputed facts. *Id.* at 799. Here, the issue was raised at the pleading stage, and we need only determine whether Gburek's allegations—including the contents of the letters she attached to her complaint—are sufficient to survive Litton's motion to dismiss.

The context and content of the first letter are sufficient to bring Gburek's claim within the scope of the FDCPA. Gburek was in default on her mortgage loan, and Litton's letter offered to discuss "foreclosure alternatives" and asked her for financial information in order to initiate that process. This letter is Litton's opening communication in an attempt to collect Gburek's defaulted home loan—by settlement or otherwise. Though it did not explicitly ask for payment, it was an offer to discuss Gburek's repayment options, which qualifies as a communication in connection with an attempt to collect a debt.[3]

For similar reasons, Titanium's letter to Gburek was also sufficient to bring her claim within the scope of the

---

[3] The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998).

statute. Although the letter states that Titanium was not authorized to accept any "mortgage payment or any other type of payment" from Gburek, the purpose of the letter was to encourage Gburek to contact Litton to discuss debt-settlement options. In this sense the Titanium letter and the phone call in *Horkey* are no different—both were communications made to induce the debtor to settle a debt. That the letter was sent by a third party rather than the debt collector does not affect this conclusion. Titanium was acting on Litton's behalf when it sent this letter. The text of the letter makes this explicit: "Your Servicer [Litton] has requested our company, Titanium Solutions Inc., to contact you . . . ."

The third and final communication is Litton's contact with Titanium, and this plainly constitutes a communication in connection with the collection of a debt. Titanium's letter to Gburek makes it clear that Litton contacted Titanium and asked it to collect financial information from Gburek for the purpose of evaluating her foreclosure alternatives. The complaint specifically alleges that Titanium was working on behalf of Litton to gather information to collect Gburek's debt. This is sufficient to bring Litton's communication with Titanium within the scope of the FDCPA.

Accordingly, it was a mistake to dismiss the complaint on the sole ground that none of these communications explicitly demanded payment from Gburek. Litton argues in the alternative that we should affirm the dismissal of the complaint because these communications did not amount to substantive violations of the FDCPA.

*See* 15 U.S.C. §§ 1692c(a)(2), 1692c(b), 1692e. This argument is not well-developed, however, and we decline to address it. *See Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (underdeveloped arguments are considered waived).

REVERSED and REMANDED.