**Gayle HELMAN, an individual,**
**Plaintiff,**

v.

**UDREN LAW OFFICES, P.C., a New Jersey Corporation, and Nationstar Mortgage LLC, a Delaware company, Defendants.**

Case No. 0:14–CV–60808.

United States District Court,
S.D. Florida.

Signed Dec. 17, 2014.

Filed Dec. 18, 2014.

The Stabenow Law Firm, PLLC, by: Tony Stabenow, Esq., Miami, FL, for the Plaintiff.

Akerman, LLP, Marc J. Gottlieb, Esq., Sumeet H. Chugani, Esq., Fort Lauderdale, FL, for Defendant Nationstar.

Cole, Scott, Kissane, P.A., Rachel Beige Kaminester, Esq., West Palm Beach, FL, for Defendant Udren.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND REFERRING CASE TO BANKRUPTCY COURT

ROBIN L. ROSENBERG, District Judge.

This matter is before the Court on Defendant Nationstar's Motion to Dismiss [DE 97] and Defendant Udren's Motion to Dismiss [DE 95]. The motions have been fully briefed by the parties. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, Defendants' motions to dismiss are granted in part and Plaintiff's Count I, Count II, and Count III are dismissed with prejudice, Plaintiff's Count VIII, Count IX, Count X, and Count XI are dismissed without prejudice, and Plaintiff's Count IV, Count V, Count VI, and Count VII are referred to the United States Bankruptcy Court for the Southern District of Florida.

### I. BACKGROUND

In 2004 Plaintiff refinanced a home mortgage loan with Bank of America. DE 91 ¶ 7. Bank of America later sold Plaintiff's mortgage to a third party. *Id.* at ¶ 8. Plaintiff subsequently filed for bankruptcy and her personal liability for her home mortgage loan was discharged in June of 2010. *See id.* at ¶ 9. On July 30, 2012, Plaintiff filed suit against Bank of America alleging, *inter alia*, that Bank of America had improperly attempted to collect upon a debt that had previously been discharged

in bankruptcy[1] ("*Helman I*"). In *Helman I*, presided over by Judge Ryskamp, Plaintiff essentially objected to Bank of America sending monthly statements to Plaintiff as those statements implied, under Plaintiff's argument, that Plaintiff still was personally liable for her mortgage. *See id.* at DE 82. In a written order, Judge Ryskamp determined that the majority of Plaintiff's claims properly were characterized as allegations that Bank of America had violated the bankruptcy court's discharge injunction. *See id.* After Judge Ryskamp so concluded, Judge Ryskamp dismissed Plaintiff's claims in part and transferred the remaining claims to the United States Bankruptcy Court for the Southern District of Florida. *See id.* Plaintiff appealed and on December 1, 2014, the Eleventh Circuit Court of Appeals dismissed the appeal for lack of jurisdiction.

During the pendency of Plaintiff's *Helman I* suit, Defendant Udren sent a letter to Plaintiff on behalf of Defendant Nationstar. DE 97 ¶ 15. Plaintiff alleges that Udren's letter, together with certain other communications, was an improper attempt to collect upon a debt for which Plaintiff was no longer personally liable. *See id.* at ¶ 15–26. On April 3, 2014, after Plaintiff's claims had been transferred to bankruptcy court in *Helman I*, Plaintiff filed the instant suit and brought claims against Defendants that were similar to the claims brought against Bank of America in *Helman I*. DE 1. Presently before the Court are Defendants' motions to dismiss Plaintiff's second amended complaint.

### II. LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the allegations in a

---

1. The Court takes judicial notice of Plaintiff's prior suit in the Southern District of Florida before Judge Ryskamp, case 9:12–CV–80808, for background information purposes and for the purpose of evaluating the order referring Plaintiff's claims to bankruptcy court in that case. *See, e.g., United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994).

complaint as true and construe them in a light most favorable to the plaintiffs. *See Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1321 (11th Cir.2012). At the pleading stage, the Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). All that is required is that there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. ANALYSIS AND DISCUSSION

Plaintiff has a raised a number of different claims against Defendants under both federal and state law. Defendants' arguments for dismissal are best grouped into six categories: (1) Counts I, II, and III, (2) Counts IV, V, VI, and VII, (3) Count VIII, (4) Count IX, (5) Count XI, and (6) Count X. Accordingly, the Court considers each group of claims in turn.

### 1. Counts I, II, and III.

Plaintiff's first three counts are all premised upon the Fair Debt Collection Practices Act. Defendants argue Plaintiff's claims fail as a matter of law. The Court begins its analysis by focusing on a central premise that underpins virtually all of Defendants' arguments: Assuming all of Plaintiff's allegations are true, did Defendants engage in debt collection under the Fair Debt Collection Practices Act?

■ A prima facie claim under the FDCPA requires the following: (1) the plaintiff was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as that term is defined under the FDCPA, and (3) the defendant engaged in an activity that is prohibited by the FDCPA. *McCorriston v. L.W.T., Inc.,* 536 F.Supp.2d 1268, 1273 (M.D.Fla.2008). The parties' arguments focus primarily on the first element—whether defendants engaged in debt collection activity—by focusing on the case of *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211 (11th Cir. 2012).

In *Reese,* the Eleventh Circuit considered the differences between the enforcement of a promissory note, which is debt collection activity under the FDCPA, and enforcement of a security interest in collateral that secures the note, which is not debt collection activity under the FDCPA.[2] *Id.* at 1216. In *Reese,* the defendant argued that a letter sent to the plaintiff only communicated about the defendant's enforcement of a security interest, via foreclosure, and did not communicate that the defendant was seeking to collect on the underlying debt. *Id.* at 1217. The Eleventh Circuit rejected this argument and held that the defendants had engaged in *both* debt collection and security interest enforcement. *Id.* By engaging in debt collection activity, the *Reese* court held that the defendants were subject to the FDCPA. *Id. Reese* therefore clearly stands for the proposition that a debt collector can engage in debt collection activity in the context of enforcement of a security interest and, as a result, Plaintiff analogizes Defendants' actions in this case to the actions of the defendant in *Reese.* In response, Defendants argue the facts of the instant case are distinguishable from *Reese* and that the alleged activities in this case are limited to security interest enforcement. Accordingly, the Court carefully compares the facts of the instant case

---

**2.** *Reese* avoided deciding whether *exclusive* security interest enforcement invokes the protections of the FDCPA, however, other Eleventh Circuit case law does hold that the scope of the FDCPA does not encompass security interest enforcement as discussed in greater detail, *infra. See Reese,* 678 F.3d at 1218 n. 3.

with the facts before the Eleventh Circuit in *Reese*.

In the instant case, Plaintiff has pled four different types of communication to establish that Defendants engaged in debt collection activity: (A) a letter to Plaintiff from Defendant Udren dated April 4, 2013, (B) a letter to Plaintiff from Defendant Nationstar dated December 9, 2013, (C) monthly statements sent to Plaintiff from Defendant Nationstar, and (D) a door hanger, allegedly left on Plaintiff's door, by Defendant Nationstar dated January 20, 2014.

### A. The April 4, 2013 Letter.

Defendant Udren sent Plaintiff a letter that contained the following:

> Our client, Nationstar Mortgage, LLC, has referred your loan to us. *You may have foreclosure prevention alternatives available to you.* You may have had an unexpected expense, loss of income, or another circumstance that has prevented you from making your mortgage payments. If you provide information to Nationstar Mortgage, LLC about your situation, Nationstar Mortgage, LLC may determine *whether you qualify for long-term relief, including options that allow you to stay in your home* (forbearance, repayment, modification) or leave your home *while avoiding foreclosure* (short sale, deed-in-lieu of foreclosure).
>
> Nationstar Mortgage, LLC may have previously sent you a letter advising you *of possible alternatives to foreclosure . . . . Even if you have previously indicated you are not interested in saving your home, you may still be evaluated for alternatives to foreclosure.*

DE 91–1 (emphasis added). Relying upon the bolded language above, Udren characterizes the letter as providing information on alternatives to foreclosure that would prevent Plaintiff's home from being fore-

closed upon. The language of the letter stands in stark contrast to the letter found to be debt collection activity in *Reese*, which read as follows:

> This letter is to advise you that your Note has been and is declared to be in default for non-payment and *Lender hereby demands full and immediate payment of all amounts due and owing thereunder.*
>
> . . .
>
> In accordance with Georgia law, you are hereby notified that *unless you pay all amounts due and owing under the Note and Security Deed* within ten (10) days of the date you receive this letter, reasonable attorney's fees will be added to the total amount for *which collection is sought.*
>
> Unless your loan is satisfied in accordance with this demand, the foreclosure sale of the above-referenced real property will be conducted. . . .

*Reese*, 678 F.3d at 1214 (emphasis added). Notably, the *Reese* court considered the letter in that case to be a "dunning" letter, which is a letter that is generated to demand payment or otherwise collect upon a debt. *See id.* at 1215; *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 n. 7 (11th Cir.2010) (defining a dunning letter). The content of the instant letter is therefore distinguishable from the content of the letter in *Reese*. Plaintiffs strongest argument in favor of the application of *Reese* is that the letter in the instant case included as an enclosure a notice that stated, *inter alia*, that the "debt" would be "assumed valid" after a period of time and that the law firm sending the letter was a debt collector attempting to collect a debt. DE 91–1. The letter in *Reese* included a similar enclosure presumably because the notice is required under various provisions

of the FDCPA. *See Reese,* 678 F.3d at 1215.

█ Courts considering such notices routinely hold that the inclusion of a notice stating that the sender is a debt collector attempting to collect a debt does not automatically trigger the protections of the FDCPA. *See Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 n. 3 (7th Cir.2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 400 (6th Cir.1998). This principle is applied equally to the opposite situation—the failure to include such a notice does not exempt a communication from the FDCPA. *Gburek,* 614 F.3d at 386 n. 3. Notably, the provisions in the notice in this case are, to a significant extent, inapplicable to Plaintiff—the debt that would be "assumed to be valid" had already been discharged. In any event, the Court's analysis on this issue requires a "commonsense inquiry" based on all factors surrounding the communication, including the "purpose and context" of the communication. *See Gburek,* 614 F.3d at 384–85.

The Court's inquiry is necessarily based upon the text of the communications in this case viewed in the context of applicable case law. On the one hand, persuasive case law in this circuit holds that communications that pertain to the enforcement of a security interest,[3] such as a notices of foreclosure, do not fall within the ambit of the FDCPA. *E.g., Warren v. Countrywide Home Loans, Inc.,* 342 Fed.Appx. 458, 460–61 (11th Cir.2009); *see also Acosta v. Campbell,* No. 04–CV–761, 2006 WL 3804729, at *4 (M.D.Fla. Dec. 22, 2006) ("Nearly every court that has addressed the question has held that the foreclosing on a mortgage is not debt collection activity for the purposes of the FDCPA.") (cit-

ing a string of cases). On the other hand, *Reese* clearly stands for the proposition that communications can simultaneously seek to enforce a security interest and collect upon the underlying debt that gave rise to the security interest. *Reese,* 678 F.3d at 1217. The Court finds that the letter in the instant case rests somewhere between *Reese* and *Warren;* while the letter does primarily concern a security interest, the letter's content is not exclusively confined to that subject as it does reference the underlying debt giving rise the security interest, albeit without an express demand for payment. For the reasons set forth above, however, the Court finds that the instant letter is distinguishable from *Reese.* A closer question is how the instant letter compares to foreclosure prevention letters that *have* been found to be debt collection activity. A case commonly cited in this context (and relied upon by Plaintiff) is *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380 (7th Cir.2010).

In *Gburek,* the Seventh Circuit considered a letter that, like the instant case, notified the recipient that alternatives existed to foreclosure. *Id.* at 382. Notably, the letter in *Gburek* sought to compel the plaintiff in that case to take action: "Again, we would like to emphasize that it is not too late to save your home. Options may be available to help preserve your home ownership. To determine options that best fit your financial situation, ***you must complete and return the enclosed form and provide the requested documentation.***" *Id.* (emphasis added). The letter also sought to impose a deadline upon the plaintiff by requiring the plaintiff to respond "within 14 business days." *Id.* In the event the plaintiff failed to respond to the letter, the defendant would "not

---

**3.** With one exception—the enforcement of a security interest can trigger the protections of the FDCPA under 15 U.S.C. § 1692f(6), however, this exception does not apply to the

instant case. *See Warren v. Countrywide Home Loans, Inc.,* 342 Fed.Appx. 458, 460 (11th Cir.2009).

delay ongoing legal action on [the plaintiff's] home until [the plaintiff's] financial information [was] received and processed." *Id.* Finally, the letter "specifically requested that [the plaintiff] provide . . . extensive financial information, including her monthly income and expenses, her assets and liabilities, her most recent pay stubs and tax returns, and recent bank statements for her checking and savings accounts. [The defendant] also asked [the plaintiff] to explain why she had defaulted on her mortgage and to propose ways to resolve her delinquent status." *Id.* at 382 n. 1. By contrast, the instant letter does not directly seek to compel Plaintiff to take action, it does not set an arbitrary deadline for a response, it does not deliver an ultimatum, it does not require Plaintiff to submit detailed financial information, and it does not require Plaintiff to provide an explanation for Plaintiff's prior default.

One other case that is helpful for comparison purposes is *Gillespie v. Chase Home Finance, LLC,* No. 09–CV–191, 2009 WL 4061428 (N.D.Ind. Nov. 20, 2009). In *Gillespie,* the district court considered the application of the FDCPA to a letter that communicated to the plaintiff that "[a] variety of workout options which might help [the plaintiff] resolve [the plaintiff's] delinquency" were available and that the plaintiff should call "immediately." *Id.* at *2. The letter further stated:

A Homeowner's Assistance specialist will discuss with you any changes in your financial situation and determine your ability to repay the Loan and avoid foreclosure of the Property. Based upon the information you provide, the specialist may be able to offer a workout option designed to cure your delinquency and keep you in your home.

. . .

We look forward to working with you and, while no guarantee can be made, we believe it would be beneficial for all parties to attempt to work out a resolution.

*Id.* at *2–3. The plaintiff in *Gillespie* also received a second letter that was identical to the letter quoted above, however, the second letter was accompanied by a notice that stated the defendant in that case "was attempting to collect a debt, and any information obtained [would] be used for that purpose." *Id.* at *4. The district court ultimately concluded that the letters were not debt collection activity because the letters "were in the nature of providing information as opposed to being in the nature of a debt collection demand." *Id.* at *5. The district court further noted that although the ultimate goal of the letters was ensuring payment of the underlying debts, the letters themselves did not provide terms of payment, establish deadlines, or threaten collection proceedings. *Id.*

After reviewing the above-cited cases and other applicable case law, the Court finds that the instant letter is distinguishable from both *Reese* and *Gburek.* The instant letter is not a "dunning" letter that seeks collection. The letter does not demand payment. The letter does not deliver an ultimatum or establish an arbitrary deadline. The letter in *Reese* clearly sought to collect upon a debt. The letter in *Gburek,* when read in its entirety, does exhibit a tangible pressure upon the recipient through a combination of looming deadlines, threatened action, and demands for information and explanations—none of which is present in the instant letter. Instead, the instant letter more closely resembles the letter in *Gillespie* that was held not to be debt collection activity.

The letter in *Gillespie* addressed the existence of alternatives to foreclosure and it also included a notice that asserted the sender was a debt collector—like the instant case. Although *Gillespie* was decided prior to *Gburek,* the instant case is distinguishable from *Gburek* as discussed

above. The Court therefore finds for all of the aforementioned reasons that the instant letter was not debt collection activity as a matter of law. The instant letter merely communicated information. Alternatively, even viewing all of Plaintiff's alleged facts in the light most favorable to Plaintiff, the instant letter is at best a communication confined to security interest enforcement which, under *Warren,* is not encompassed by the scope of the FDCPA. Although some courts have stated that *Warren* has been "called into question" by the Eleventh Circuit's decision in *Reese,*[4] the *Reese* court expressly declined to revisit its decision in *Warren*[5] and, moreover, the holdings of these two cases are not irreconcilable. *Warren* stands for the proposition that security interest enforcement is not encompassed by the FDCPA and *Reese* stands for the proposition that a communication can serve dual purposes—both debt collection and security interest enforcement.

### B. The December 9, 2013 Letter.

Plaintiff argues that a letter sent by Defendant Nationstar to Plaintiff was debt collection activity. The letter included the following: "Printed above is the name of your Dedicated Loan Specialist. This person will serve as your single point of contact *to help you explore available options that could help you avoid foreclosure.*" DE 91–6 (emphasis added). The letter does not demand payment and, viewed in its entirety, the letter contains even less text relevant to Plaintiff's claims than the aforementioned April 4, 2013 letter. For the same reasons as set forth above, the Court finds that this letter is distinguishable from *Reese* and was not debt collection activity.

### C. Monthly Statements Sent to Plaintiff.

■ Plaintiff also asserts that Defendants engaged in debt collection activity by sending monthly statements to Plaintiff that established, among other things, the balance Plaintiff would be required to pay to satisfy the mortgage on her residence. DE 91–4. The monthly statements included, however, the following language: "This statement is sent for informational purposes only *and is not intended as an attempt to collect, assess, or recover a discharged debt from you.* .... *If this account is active or has been discharged in a bankruptcy proceeding,* be advised this communication is for informational purposes only and *is not an attempt to collect upon a debt.*" *Id.* (emphasis added). Because the monthly statements did not demand payment and instead included express language for persons who had received a bankruptcy discharge, the monthly statements do not fall under the scope of *Reese* and the Court finds, after reviewing the statements and case-specific circumstances in their entirety, that the monthly statements in the instant case, as a matter of law, did not constitute debt collection activity.[6] *See Bailey v. Sec.*

---

4. *See Johnstone v. Aldridge Connors, LLP,* No. 61757, 2013 WL 6086049 (S.D.Fla. Nov. 20, 2013).

5. *See Reese,* 678 F.3d at 1218 n. 3.

6. In *Marshall v. Deutsche Bank National Trust Co.* the district court noted: "The loan statements merely provided information to Plaintiff about her mortgage such as payment due dates and amounts owed. While ostensibly related to the collection of a debt, it would be impractical to find that loan statements must comply with the FDCPA. A loan statement is essentially a communication from a creditor to a debtor, not a communication from a debt collector for the purposes of collecting a debt." 10–CV–00754 at p. 8, 2011 WL 345988 (E.D.Ark. Feb. 1, 2011) (citing *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 388–89 (7th Cir.1998)). That decision was affirmed by the Eighth Circuit Court of Appeals. *Marshall v. Deutsche Bank Nat'l Trust Co.,* 445 Fed.Appx. 900 (8th Cir.2011).

*Nat'l Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir.1998) (holding that a letter that merely informs a plaintiff about the status of their account and does not demand payment is not debt collection activity); *Ramirez v. Gen. Motors Acceptance Corp.*, 280 B.R. 252, 258 (C.D.Cal.2002) ("[T]o hold that a secured creditor is precluded from sending monthly billing statements to a debtor ... would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors."); *see also In re Whitmarsh*, 383 B.R. 735, 736–37 (Bankr. D.Neb.2008); *In re Pultz*, 400 B.R. 185, 190 (Bankr.D.Md.2008).

### D. The January 20, 2014 Door Hanger.

█ Plaintiff's final alleged basis to establish Defendants engaged in debt collection activities is a door hanger left at Plaintiff's residence on January 20, 2014. DE 91–7. This hanger contained the following text: "Important information enclosed. Important. Please Call Nationstar Mortgage.... Please be ready to give your account number. We are expecting your call today." *Id.* Although a small amount of text on the hanger is omitted from the quotation above, the door hanger does not demand payment and, other than requesting that Plaintiff call Nationstar, the hanger contained virtually no information whatsoever. For the same reasons as set forth above, the Court finds that Nationstar's alleged usage of the door hanger was not debt collection activity.

In summary, the Court finds that even accepting all of Plaintiff's allegations as true and even viewing all inferences in the light most favorable to Plaintiff, the Defendants' communications were not debt collection activity as a matter of law. The Court finds that the activities at issue merely sought to communicate information. Even viewing the facts in the Complaint in the light most favorable to Plaintiff, the Court still finds, at best, the communications related to the enforcement of a security interest. Under *Warren v. Countrywide Home Loans, Inc.*, "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property .... falls outside of the ambit of the FDCPA." 342 Fed.Appx. 458, 460 (11th Cir.2009). The Court therefore finds that Plaintiff has failed to state a claim under the FDCPA and Count I, Count II, and Count III must be dismissed. Furthermore, because Plaintiff's allegations and evidence for these counts is before the Court upon Plaintiff's second amended complaint, because Plaintiff's claims have previously been dismissed and amended, and because this is Plaintiff's second suit on the matter, the Court finds that any further amendment by Plaintiff would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001). As such, the Court's dismissal for these counts is with prejudice.

### 2. Counts IV, V, VI, and VII.

█ Plaintiff's fourth, fifth, sixth, and seventh counts are all alleged under state law causes of action. Each of these claims, however, is premised upon the allegation that Defendants essentially violated a bankruptcy court discharge injunction. For example, Plaintiff's fourth count under the Florida Consumer Collections Practices Act alleges "Nationstar attempted to collect interest and late fees, not due and owing because the debt was not owed, thereby misrepresenting the debt and its status." DE 91 ¶ 206. Plaintiff's fifth and sixth count, both of which are also asserted under the FCCPA, allege "Defendants claimed, attempted, or threatened to enforce a debt knowing that the debt was not legitimate" and "Defendants have engaged in unfair and deceptive collection practices" respectively. DE 91 ¶¶ 212, 218.

Finally, Plaintiff's seventh count is alleged under the Florida Deceptive and Unfair Trade Practices Act and alleges "Defendant continued to collect on a debt, which it knew were [sic] not owed." DE 91 ¶ 225.

Each of Plaintiff's counts, as set forth above, is therefore necessarily premised upon the allegation that Defendants improperly attempted to collect upon a debt that Plaintiff was no longer personally liable for *because of a prior bankruptcy discharge.*[7] After reviewing Plaintiffs allegations, the Court finds that these claims necessarily involve the question of whether or not Defendants violated a bankruptcy court discharge injunction.

■■■ Proceedings to enforce an injunction under section 524(a)(2) of the Bankruptcy Code are core proceedings under 28 U.S.C. § 157 that arise under the Bankruptcy Code. *See Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 973 (11th Cir.2012). Congress preempted private state law remedies with the discharge injunction in § 524. *See Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 426 (6th Cir.2000). The Bankruptcy Code "governs the field" of bankruptcy law and preempts state law on that basis. *See In re Rosenberg,* 471 B.R. 307, 315 (Bankr.S.D.Fla. 2012). A bankruptcy court injunction must be enforced and construed by the bankruptcy court that issued the injunction. *See Alderwoods,* 682 F.3d at 973. In Plaintiff's prior suit against Bank of America, Judge Ryskamp ruled that Plaintiff's state-law claims were properly characterized as falling within the jurisdiction of the

bankruptcy court due to the necessary implication those claims had with Plaintiff's discharge injunction and, as a result, Judge Ryskamp transferred Plaintiff's state-law claims to the bankruptcy court. *Helman v. Bank of America,* No. 12–CV–80808 (S.D.Fla. Aug. 7, 2013). After reviewing Judge Ryskamp's reasoning, the Court finds his decision in that case to be persuasive.

Artful pleading cannot allow a plaintiff to avoid jurisdictional restrictions; a court must look to the true nature of an action, instead of relying upon a plaintiff's characterizations, to determine whether a claim falls under the exclusive jurisdiction of another court. *See Roberts v. United States,* 242 F.3d 1065, 1068 (Fed.Cir.2001). "The 'nature of a pleading' is determined by its 'substance, not its label.'" *AT & T Mobility LLC v. Bushman,* No. 11–CV–80922, 2011 WL 5924666, at *2 (S.D.Fla. Sept. 23, 2011) (quoting *Armstrong v. Capshaw, Goss & Bowers, LLP,* 404 F.3d 933, 936 (5th Cir.2005)). Civil proceedings arising under Title 11 "are matters invoking a substantive right created by the Bankruptcy Code." *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir.1999) (citing *Wood v. Wood,* 825 F.2d 90, 97 (5th Cir.1987)).

■■■ The remedy for a violation of a discharge order is to seek sanctions from the bankruptcy court that issued the injunction. *See Alderwoods,* 682 F.3d at 973. "Where, as in this case, a debtor thinks a creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is properly sought in the first in-

---

**7.** The Discharge Order entered in Plaintiffs bankruptcy case provides, in relevant part: "The discharge prohibits any attempt to collect from the debtor(s) a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from

the debtor(s).... A creditor who violates this order can be required to pay damages and attorney's fees to the debtor." *In re Helman,* No. 09–19174, DE 19 (Bankr.S.D.Fla. Aug. 24, 2009); *see In re Minbatiwalla,* 424 B.R. 104, 108–09 (Bankr.S.D.N.Y.2010) (a mortgage loan servicer is a creditor under the Bankruptcy Code); *see also Greer v. O'Dell,* 305 F.3d 1297, 1303 (11th Cir.2002).

stance from the bankruptcy court 'rather than in the district court which only has appellate jurisdiction over bankruptcy cases.'" *Yaghobi v. Robinson,* 145 Fed. Appx. 697, 699 (2nd Cir.2005) (quoting *Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 121 (2d Cir.2001)).

In summary, Plaintiff has attempted to draft her Complaint in such a way as to avoid the jurisdiction of the bankruptcy court. But Plaintiff cannot, through artful pleading, avoid the fact that the Bankruptcy Code has preempted private state law remedies in the context of the allegations in this case. Nor can Plaintiff through artful pleading avoid the exclusive jurisdiction of the bankruptcy court to enforce its own injunctions. Finally, Plaintiff cannot, through artful pleading, avoid the fact that local Administrative Order 84–12–Civ–Misc and Local Rule 87.2 compel the Court to transfer bankruptcy matters to the bankruptcy court,[8] notwithstanding the fact that no party has filed a motion for such a transfer. Accordingly, the Court finds that Count IV, Count V, Count VI, and Count VII shall be referred to the United States Bankruptcy Court for the Southern District of Florida. The Court notes, however, that despite the Court's previous conclusion that (under the FDCPA) Defendants did not engage in debt collection activity, the Court expresses no opinion whether Defendants' alleged actions would violate Plaintiff's bankruptcy discharge and leaves such a determination to the exclusive discretion of the Bankruptcy Court.

### 3. Count VIII.

Plaintiff argues that a cloud exists on the title to her property because Defendant Nationstar has asserted an ownership interest in her property. Plaintiff argues that Nationstar's asserted interest is wrongful because non-party Bank of America's recorded assignment of mortgage in favor of Nationstar was filed when Bank of America was no longer the owner of Plaintiff's mortgage. Notably, Plaintiff does not allege, however, that Bank of America lacked *the authority* to file the assignment.

▉▉▉▉ Quiet title actions are of common law origin, but have been codified in chapter 65 of the Florida Statutes. In order to bring a quiet title action to real property, the complaint must "allege sufficient facts to present a judiciable matter to a court of competent jurisdiction." *Woodruff v. Taylor,* 118 So.2d 822, 822 (Fla.Dist. Ct.App.1960). A complaint to quiet title must allege:

1. plaintiff's title to the property in controversy;
2. how plaintiff obtained title to the property;
3. the chain of title;
4. the alleged cloud or defect on title and the basis upon which defendant claims an interest in or claims the title; and
5. why defendant's claim is not well founded.

FLA. STAT. § 65.061 (2014); *Woodruff,* 118 So.2d at 822. Since quiet title is an equitable remedy, the plaintiff must also demonstrate why there is no relief at law. Pursuant to section 65.061(3), Florida Statutes, the plaintiff must also deraign title[9]

8. On July 11, 1984, the Chief United States District Judge for the Southern District of Florida entered an Order of Reference. The Order of Reference provides, in relevant part, "... it is hereby ORDERED that any and all cases arising under Title 11 and any or all proceedings arising in or related to a case

under Title 11 shall be referred to the Bankruptcy Judges for the District."

9. A precise definition for "deraigning title" is not evident from Florida case law or the Florida Legislature. However, the term has been used to describe both the duty of a party

for a period of at least seven years prior to filing suit (unless the court orders otherwise), setting forth the book and page number where the instruments are recorded. Furthermore, a plaintiff must allege specific facts with clearness, accuracy, and certainty that show (1) the asserted claim has apparent validity and (2) the opposing party's title is invalid. *See Rhodes v. JPMorgan Chase Bank, N.A.*, No. 12–CV–80368, 2012 WL 5411062, at *3 (S.D.Fla. Nov. 6, 2012) (citing *Brickell v. Trammell*, 77 Fla. 544, 82 So. 221, 229 (1919)).

Because Plaintiff has not alleged Defendant's ownership interest is derived from an entity that lacked the authority to execute the assignment in question, because Plaintiff's allegations do not clearly conform to the requirements delineated in *Woodruff*, because Plaintiff has not deraigned title for a period of at least seven years prior to filing suit, and because Plaintiff has failed to allege specific facts with "clearness, accuracy, and certainty," Count VIII is dismissed without prejudice.

### 4. Count IX.

Plaintiff's ninth count asserts that Defendant Nationstar violated the Real Estate Settlement Procedures Act. Plaintiff substantiates her claim by attaching copies of the documents in which she made a qualified written request, to Nationstar, under RESPA. DE 91 –2, 91–8. For a document to fall within the definition of a qualified written request under RESPA, the document must contain information that (i) shows why a plaintiff believes his or her loan account servicing was in error or (ii) seeks information pertaining to the servicing of the loan. 12 U.S.C. § 2605(e) (2014). Plaintiff's letters satisfy neither of the aforementioned requirements. *See Echeverria v. BAC Home Loans Servic-*

*ing, LP*, 900 F.Supp.2d 1299, 1306–07 (M.D.Fla.2012) (finding that a request for a copy of a promissory note was not a qualified written request); *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F.Supp.2d 561, 574–75 (E.D.N.C.2012) (finding letter seeking copies of loan documents and assignments of deeds was not a qualified written request under RESPA). Plaintiff's letters do not pertain to the "servicing" of Plaintiff's loans nor do Plaintiff's letters explain why the loan account was in error. Instead, Plaintiff's proffered letters merely requested copies of legal documents and proof of transfer. Plaintiff's ninth count is therefore dismissed without prejudice, however, the Court recognizes that this claim has received minimal attention in the papers before the Court. In the event Plaintiff can show legal authority for the proposition that the proffered letters *do* satisfy RESPA requirements and in the event Plaintiff can distinguish the authority cited above, Plaintiff may so argue in a future pleading or motion.

### 5. Count XI.

Plaintiff alleges that Defendant Nationstar violated the Fair Credit Reporting Act by accessing Plaintiff's personal credit report when Nationstar knew that Plaintiff was not personally liable for the mortgage on her residence. A facially sufficient claim under the FCRA requires, however, that Defendant's actions were willful or negligent and that Defendant used the credit report for an impermissible purpose. *See Braun v. Client Servs. Inc.*, 14 F.Supp.3d 391, 396–97 (S.D.N.Y.2014). Moreover, a plaintiff's allegations cannot be conclusory and must include specific facts as to a defendant's mental state when

---

to prove that he or she is the grantee in a chain of title under which he or she claims, and also to show the parties or chain of title

from which he or she claims. *McDaniel v. McElvy*, 91 Fla. 770, 108 So. 820, 836 (1926).

the report was accessed. *See id.* Because Plaintiff's Complaint fails to clearly set forth such allegations, Count XI is dismissed without prejudice.

### 6. Count X.

Finally, Plaintiff's tenth count seeks general declaratory relief. The declaratory relief sought by Plaintiff, however, is broad in scope and encompasses Plaintiff's federal claims that have been dismissed with prejudice, Plaintiff's state claims that will be referred to the Bankruptcy Court, and Plaintiff's remaining claims that have been dismissed without prejudice. Accordingly, Plaintiff's tenth count is dismissed without prejudice for Plaintiff to amend her request for declaratory relief in light of the Court's rulings herein.

### IV. CONCLUSIONS AND RULING

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Nationstar's Motion to Dismiss [DE 97] and Defendant Udren's Motion to Dismiss [DE 95] are both **GRANTED IN PART.** Count I, Count II, and Count III are all **DISMISSED WITH PREJUDICE.** Count IV, Count V, Count VI, and Count VII are all **REFERRED** to the United States Bankruptcy Court for the Southern District of Florida. Count VIII, Count IX, Count X, and Count XI are **DISMISSED WITHOUT PREJUDICE.** All pending motions are **DENIED AS MOOT.** Plaintiff may amend her Complaint within ten (10) days of the date of rendition of this order. In the event Plaintiff does not amend her Complaint within the specified period of time, the Court will close this case.