Peter BOHRINGER, et al., Plaintiffs,

v.

BAYVIEW LOAN SERVICING, LLC, Defendant.

CASE NO. 15–21053–CIV–ALTONAGA/O'Sullivan

United States District Court, S.D. Florida.

Signed 09/10/2015

Alex D. Weisberg, Weisberg Consumer Law Group, P.A., Cooper City, FL, for Plaintiffs.

William P. Heller, Marc J. Gottlieb, Sumeet H. Chugani, Akerman LLP, Fort Lauderdale, FL, for Defendant, Bayview Loan Servicing, LLC.

### ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court on Defendant, Bayview Loan Servicing, LLC's ("Bayview['s]") Motion to Dismiss Amended Complaint ... ("Motion") [ECF No. 29], filed June 25, 2015. On July 22, 2015, Plaintiffs, Peter and Aprill Bohringer (together, "Plaintiffs") filed a Response ... ("Response") [ECF No. 40], to which Bayview filed a Reply ... ("Reply") [ECF No. 43]. The Court has carefully reviewed the parties' written submissions; the First Amended Complaint ... ("Amended Complaint") [ECF No. 21]; the record; and applicable law.

## I. BACKGROUND [1]

### A. The Amended Complaint

Around August 2006, Plaintiffs entered into a mortgage loan agreement (the "Loan") with Countrywide Mortgage, with Plaintiffs' principal residence serving as security for the debt. (*See* Am. Compl.

---

1. The facts alleged in the Amended Complaint are accepted as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) (noting when reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true).

¶¶ 11, 13).[2] Former defendant, Bank of America, N.A. ("BANA"), subsequently acquired the Loan and began servicing it. (*See id.* ¶ 14). In October 2009, Plaintiffs filed for relief under Chapter 13 of the U.S. Bankruptcy Code, but the Loan was not included in their bankruptcy plan. (*See id.* ¶¶ 15–16). In March 2013, Plaintiffs and BANA entered into a modification agreement regarding the Loan, and Plaintiffs thereafter made all monthly payments owed to BANA. (*See id.* ¶¶ 17–18).

The last monthly payment statement Plaintiffs received from BANA was dated February 18, 2014 (the "February 18 Statement"); the February 18 Statement reflected Plaintiffs were current on their payments and stated the next monthly payment, in the amount of $2,087.33, was due by March 1, 2014. (*See id.* ¶¶ 19–21, 34). Plaintiffs' payment on the February 18 Statement posted on February 24, 2014. (*See id.* ¶ 23). In the meantime, on February 21, 2014, BANA informed Plaintiffs Bayview would begin servicing Plaintiffs' account on March 16, 2014. (*See id.* ¶ 22).

According to Plaintiffs, "Bayview contends that Plaintiffs were behind in their payments at the time it acquired the servicing rights to the [Loan]." (*Id.* ¶ 24 (alteration added)). Plaintiffs point to a letter Bayview sent on September 11, 2014 to the New York Department of Financial Services (the "September 11 Letter"), in which Bayview states:

> [O]ur records indicate that the loan was past due for the month of January 2014 when Bayview acquired the servicing rights on March 16th, 2014. For said reason the account is due for the July 2014 monthly payment. Furthermore, our records indicate that the loan was transferred with the correct payment amount of $2,051.47. However, due to the status of the loan, the payment submitted on April 30, 2014 was placed in suspense as the loan was due for the February 2014 monthly payment and was considered a partial payment.

(*Id.* ¶ 25 (alteration added)). Thus, Plaintiffs allege "[d]espite its records indicating that the [L]oan was transferred with the correct payment amount, [Bayview] asserted that the [L]oan was behind." (*Id.* ¶ 26 (alterations added)).

Plaintiffs also allege "[o]n several occasions" they "provided Bayview with notice that they had made all required payments." (*Id.* ¶ 27 (alteration added)). Plaintiffs do not specify when or how they provided such notice, but they nevertheless conclude it follows "Bayview knew, or should have known, that Plaintiffs were current in their payments at the time of transfer, and not behind." (*Id.* ¶ 28).

After the foregoing allegations, the Amended Complaint provides greater de-

---

**2.** The "Mortgage" document containing at least some of the terms governing the parties' debt relationship is attached to the Motion as Exhibit B [ECF No. 29-2]. The Mortgage and certain other documents extrinsic to the Amended Complaint are properly relied upon in this Order because (1) they are central to Plaintiffs' claims and (2) their authenticity is not disputed. *See White v. Bank of Am. Bank, NA,* 597 Fed.Appx. 1015, 1018 (11th Cir.2014) (citations omitted) (relying on security deed and note on a motion to dismiss Fair Debt Collection Practices Act ("FDCPA") claims).

Additionally, the Court notes the Mortgage refers to a "Note," that, according to the definition given to it in the Mortgage, contains at least some of the terms of the parties' debt relationship. (*See* Mortg. 1). As one would expect, the Note appears to be a document distinct from the Mortgage, which itself serves as the "Security Instrument" with respect to the Loan. (*See id.*). Neither party has submitted the Note.

tail about the Plaintiffs' alleged payment history on the Loan. As for the March 2014 payment, on March 19, 2014, Plaintiffs made a partial payment of $1,044.00, which they supplemented on May 5, 2014 with a payment to Bayview of $1,043.67. (*See id.* ¶¶ 32, 37). Plaintiffs paid Bayview the April 2014 payment on April 30, 2014, in the amount of $2,051.47. (*See id.* ¶ 38). They sent the same amount on May 12, 2014, presumably for the May 2014 payment. (*See id.* ¶ 39).

Meanwhile, on April 22, 2014, Plaintiffs sent a letter to Bayview (the "April 22 Letter"), informing it they had not received any monthly account statements since Bayview began servicing the Loan, and requesting Bayview send them the statements. (*See id.* ¶ 36). Bayview responded in a letter dated May 21, 2014 (the "May 21 Letter"),[3] stating:

Dear Mr. and Mrs. Bohringer:

This letter is in response to the recent correspondence received in our office regarding the above referenced account.

After reviewing your account, our records show that your loan is in Bankruptcy Chapter 13 effective October 5, 2009. For said reason, we are unable to generate billing statements on your account. Please note your account is currently due for April 1, 2014 in the amount of $2,051.47.

We trust this letter serves to clarify our position.

If you have any further questions, please contact our Customer Service Department at....

(May 21 Letter (alteration added); *see also* Am. Compl. ¶¶ 40–41).

At the bottom of the May 21 Letter is a notice in a smaller, different font, that states:

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

(May 21 Letter; *see also* Am. Compl. ¶ 42).

Plaintiffs claim Bayview did not (1) include in the May 21 Letter the notices required by 15 U.S.C. section 1692g(a); or (2) send Plaintiffs a statement of their rights, as required by 15 U.S.C. section 1692g(a), within five days after the May 21 Letter (or at any other time). (*See id.* ¶¶ 43–45).

The first statement of account Bayview sent to Plaintiffs was dated December 4, 2014 (the "December 4 Statement"); it stated $6,154.41 was due on the Loan. (*See id.* ¶¶ 35, 47–48). Yet, according to Plaintiffs, they had continued making their regular monthly payments each month for June, July, August, September, October, November, and December; the December payment having been sent on December 4, 2014—the same day Bayview sent the December 4 Statement. (*See id.* ¶ 46).

Plaintiffs also allege Bayview assessed charges on their account that were not expressly authorized by law or by their debt agreement: on March 26, 2014, five

---

**3.** The April 22 Letter and the May 21 Letter, both referred to in the Amended Complaint, are attached to the Motion as part of Exhibit A [ECF No. 29–1].

charges labeled "Corp. Advance Adjustment," totaling $1,716.00; on April 10, 2014, a $14.00 charge labeled "Property Preservation;" on May 9, 2014, $300.00 in "Attorney Advances;" and on May 15, 2014, another $14.00 charge labeled "Property Preservation." (*Id.* ¶¶ 29–31).

Plaintiffs assert four counts against Bayview under the FDCPA, 15 U.S.C. section 1692 *et seq.*: violation of 15 U.S.C. section 1692e(2)(A) for "falsely representing the character, amount, or legal status of Plaintiffs' debt" (Count I); violation of 15 U.S.C. section 1692e(10) for "using false, deceptive, or misleading representations or means in connection with the collection of Plaintiffs' debt" (Count II); violation of 15 U.S.C. section 1692f(1) for "collecting, or attempting to collect, an amount not expressly authorized by the agreement creating the debt or by law" (Count III); and violation of 15 U.S.C. section 1692g(a) for "failing to provide Plaintiffs with the notices required by 15 U.S.C. § 1692g(a), either in the initial communication with Plaintiffs, or in writing within 5 days thereafter" (Count IV). Plaintiffs also seek relief against Bayview under the Florida Consumer Collection Practices Act ("FCCPA"), Florida Statute section 559.55 *et seq.*, on the ground Bayview violated Florida Statute section 559.72(9) by "knowingly claiming, attempting, or threatening to enforce a debt when the debt is not legitimate, or asserting the existence of some other legal right when the right does not exist." (Count V).[4]

### B. The Original Complaint

The pleading that preceded the Amended Complaint was a Complaint . . . ("Original Complaint") [ECF No. 1], filed March 16, 2015. The Original Complaint asserted claims against Bayview as the sole defendant: two counts under the FDCPA (the first count for violation of 15 U.S.C. section 1692g(a) and the second for violation of 15 U.S.C. section 1692e(11)); one count under the FCCPA; and one count under the TILA. (*See* Original Compl. Counts I–IV). Bayview moved to dismiss the Original Complaint (*see* [ECF No. 8]), and, after a hearing held on May 22, 2015 (the "May 22 Hearing"), the Court granted the motion, dismissed the Original Complaint, and granted Plaintiffs leave to amend. (*See* May 22 Order [ECF No. 17]; May 22 Hearing Transcript [ECF No. 28]).

Plaintiffs' FDCPA and FCCPA claims in the Original Complaint were based in part on a letter Bayview sent to Plaintiffs on March 27, 2014 (the "March 27 Letter") (attached to the Original Complaint as Exhibit A), that Plaintiffs alleged was Bayview's "initial communication with Plaintiffs with respect to the [Loan]" (Original Compl. ¶¶ 21–23). The claims were also based on Bayview's subsequent communications with Plaintiffs—communications as to which Plaintiffs provided no detailed allegations (*see id.* ¶¶ 28–30). At the May 22 Hearing, the Court found the March 27 Letter could not form the basis of an FDCPA or FCCPA claim because the letter was not made in connection with the collection of a debt: it was simply an initial communication to Plaintiffs that Bayview was the new servicer of the Loan, and nothing in the letter suggested Bayview sought payment of any kind. (*See* May 22 Hr'g Tr. 18:1–8; 20:5–10). Nevertheless, the Court granted Plaintiffs leave to file an

---

4. Plaintiffs also asserted a claim against BANA under the Truth in Lending Act ("TILA"), 15 U.S.C. section 1601 *et seq.* (*see* Am. Compl. Count VI), but Plaintiffs and BANA settled that claim (*see* Notice . . . [ECF No. 46]).

amended complaint to assert other claims based on the Original Complaint's generic allegations of Bayview's communications subsequent to the March 27 Letter—provided Plaintiffs supported those claims with sufficiently specific allegations. (*See id.* 18:9–13). What followed was the Amended Complaint, now the target of Bayview's second motion to dismiss, seeking dismissal with prejudice of all counts asserted against it. (*See generally* Mot.).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insuf-

ficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937), *abrogated on other grounds by Mohamad v. Palestinian Auth.,* —— U.S. ——, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

## III. ANALYSIS

### A. FDCPA Claims

██ To state a claim under the FDCPA, a plaintiff must plead: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Bentley v. Bank of Am., N.A.,* 773 F.Supp.2d 1367, 1371 (S.D.Fla. 2011) (internal quotation marks and citation omitted). As for Plaintiffs' specific FDCPA claims, section 1692e provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (alteration added). Plaintiffs seek relief under two sub-provisions: section 1692e(2)(A), which prohibits "[t]he false representation of ... the character, amount, or legal status of any debt," *id.* § 1692e(2)(A) (alterations added); and section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10) (alteration added).

Plaintiffs assert claims under two additional provisions of the FDCPA. Section 1692f provides "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f; Plaintiffs seek relief under the

sub-provision prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* 1692f(1) (alteration added). Plaintiffs' final FDCPA claim is brought under section 1692g(a), which states, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing [the following list of requirements]...." *Id.* 1692g(a) (alterations added).

### 1. Debt Collector

■ Bayview argues Plaintiffs fail to state a claim for any of their counts brought under the FDCPA because the Amended Complaint does not establish Bayview is a "debt collector" under the FDCPA. (*See* Mot. 5–7). As indicated, each provision of the FDCPA under which Plaintiffs seek relief requires Bayview fit within the statutory definition of a "debt collector."

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).[5] Excluded from this definition is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such

activity ... concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii) (alteration added). According to Bayview, Plaintiffs' allegations with regard to this threshold requirement of the FDCPA claims give rise to only one plausible inference: the Loan was not in default at the time Bayview obtained servicing rights to the Loan, and accordingly, Bayview is excluded from the definition of a "debt collector."

The Eleventh Circuit recently addressed the (F)(iii) exclusion, explaining "[e]ntities falling within this exclusion include 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing.'" *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314–15 n. 4 (11th Cir.2015) (alteration added) (quoting S.Rep. No. 95–382, at 3–4); *see also Fenello v. Bank of Am., NA*, 577 Fed.Appx. 899, 902 (11th Cir.2014) (citations omitted); *Benjamin v. CitiMortgage, Inc.*, No. 12–62291–CIV, 2013 WL 1891284, at *3 (S.D.Fla. May 6, 2013); *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1307–08 (S.D.Fla.2009). Thus, if a loan servicer is covered by the (F)(iii) exclusion, it effectively "stand[s] in the shoes of a creditor," but if it is not covered, then it is a debt collector subject to the FDCPA's restrictions. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir.2012) (alteration added).

Plaintiffs allege Bayview fits the general definition of a "debt collector": "Bayview uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or at-

---

5. A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed...." 15 U.S.C. § 1692a(4) (alteration added).

tempts to collect, directly or indirectly, debts once owed or due, or asserted to be once owed or due another." (Am. Compl.¶ 12).[6] It is also plain Bayview is a loan servicer responsible for servicing Plaintiffs' debt, which is still owed to BANA. (*See id.* ¶¶ 22, 24, 25, 47). Thus, the sole question remaining under the (F)(iii) exclusion is whether the Loan was "in default at the time it was obtained by" Bayview.

Bayview is correct Plaintiffs allege the Loan was never in default (*see id.* ¶¶ 18, 27, 28), but Plaintiffs are equally correct the analysis does not end there. Even if a debt is not actually in default at the time its servicing rights are transferred to a loan servicer, the debt is nevertheless "in default" under the FDCPA if the servicer treats the debt as in default at the time of transfer. *See Davidson,* 797 F.3d at 1311–12, n. 2 (citing *Bridge,* 681 F.3d at 362; *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 538 (7th Cir.2003)); *see also Belin v. Litton Loan Servicing, LP,* No. 8:06–cv–760–T–24 EAJ, 2006 WL 1992410, at *3 (M.D.Fla. July 14, 2006). In other words, a debt is considered "in default" if the servicer mistakenly believes the debt is in default. Plaintiffs contend, notwithstanding their allegation the Loan has never actually been in default, they adequately allege Bayview treated the Loan as in default at the time it acquired the servicing rights to the Loan. (*See* Resp. 1–6).

Intertwined with the question of whether Plaintiffs adequately allege Bayview treated the Loan as in default is the question of what standard should be used to evaluate the Loan's actual default status,

for if the alleged debt collector does not explicitly assert the debt is in default but nevertheless acts consistently with the parties' understanding of what constitutes a default, it can be inferred the debt collector is treating the loan as in default. The FDCPA is silent as to the meaning of the word "default," but "courts have repeatedly distinguished," at least as a general matter, "between a debt that is in default and a debt that is merely outstanding," the typical understanding being "that only after some period of time does an outstanding debt go into default." *Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 86–87 (2d Cir.2003) (citing cases).

"[T]he determination of whether a debt is in default" or, by contrast, merely outstanding or delinquent, "is to be made by a court on a case-by-case basis, and ... applicable contractual or regulatory language defining the point of default may be instructive." *Church v. Accretive Health, Inc.,* No. 14–CIV–0057–WS–B, 2014 WL 7184340, at *3 (S.D.Ala. Dec. 16, 2014) (alterations added; internal quotation marks omitted) (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.,* 923 F.Supp.2d 430, 440 (E.D.N.Y.2013) (citing *Alamo v. ABC Fin. Servs., Inc.,* No. 09–5686, 2011 WL 221766, at *5 (E.D.Pa. Jan. 20, 2011); *Simmons v. Med–I–Claims,* No. 06–1155, 2007 WL 486879, at *7 (C.D.Ill. Feb. 9, 2007))). For example, the court in *Goodin v. Bank of America, N.A.,* 114 F.Supp.3d 1197, 2015 WL 3866872 (M.D.Fla. June 23, 2015), relied on the terms of the creditor and debtor's contract. *See id.* at 1204–05, at *4–5; *see also Hartman v. Meridian Fin. Servs., Inc.,* 191 F.Supp.2d 1031, 1042–44 (W.D.Wis.

---

**6.** Bayview seems to challenge this allegation as conclusory (*see* Reply 7 n.7), but Plaintiffs' claim Bayview fits the general definition of

"debt collector" is also supported by Bayview's own representation in the May 21 Letter it is a debt collector.

2002). Similarly, the court in *Prince v. NCO Financial Services, Inc.,* 346 F.Supp.2d 744 (E.D.Pa.2004), used the creditor's standard customer agreement together with the creditor's written guidelines. *See id.* at 747–50.

In support of their allegation "Bayview contends that Plaintiffs were behind in their payments at the time it acquired the servicing rights to the [Loan]" (Am. Compl. ¶ 24 (alteration added); *see also id.* ¶ 26), Plaintiffs refer to the September 11 Letter in which Bayview represents to the New York Department of Financial Services "our records indicate that the loan was past due for the month of January 2014 when Bayview acquired the servicing rights on March 16th, 2014" (*id.* ¶ 25).[7] It is clear Bayview is discussing the status of the loan at the point in time relevant to the (F)(iii) exclusion (*i.e.,* the time of acquisition of the servicing rights), but it is not clear whether "past due" means "in default" or merely "delinquent." Comparing the September 11 Letter to the May 21 Letter, which states Plaintiffs' "account is currently due for April 1, 2014," "past due" suggests a status different than "currently due."

Additionally, the aforementioned sentence in the September 11 Letter is followed by the statement, "For said reason the account is due for the July 2014 monthly payment." (Am.Compl.¶ 25). In isolation, the unqualified "due" suggests "currently due," but the fact the Loan was purportedly due for July 2014—two months before the date of the letter— suggests a meaning more akin to the ambiguous "past due" used in the preceding

sentence of the letter. This interpretation is bolstered by Bayview's later statement also reflecting a two-month gap in loan payments: "due to the status of the loan, the payment submitted on April 30, 2014 was placed in suspense as the loan was due for the February 2014 monthly payment...." (*Id.*).

While the September 11 Letter is ambiguous as to whether Bayview treated the Loan as in default on March 16, Plaintiffs' additional allegations, together with the terms of the Mortgage, provide further context for Plaintiffs' contention Bayview treated the loan as in default. Plaintiffs allege Bayview assessed various unauthorized charges to their account on certain dates in March, April, and May. (*See id.* ¶¶ 29–31). These charges included "Corp. Advance Adjustment," "Property Preservation," and "Attorney Advances." (*Id.*). The inference these charges were assessed because Bayview treated the Loan as in default is plausible given the terms of the Mortgage:

Lender may charge me fees for services performed *in connection with my default,* for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee.

(Mortg. § 14 (emphasis added)).

Although the Mortgage does not directly define "default," additional terms of the

---

7. Neither party has submitted a copy of the September 11 Letter. Bayview states the letter was a response to an inquiry Plaintiffs made (*see* Mot. 1), but this information is not found in the Amended Complaint or reflected in an exhibit submitted by either party; the Court therefore disregards the statement.

Mortgage support Plaintiffs' contention a failure to make a single monthly payment is a ground for declaring default. One of the necessary conditions for the lender's acceleration of the Loan under Section 22 of the Mortgage is Plaintiffs' "fail[ure] to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the *promises to pay the Sums Secured when due,* or *if another default occurs* under this Security Instrument." (*Id.* § 22(a) (alteration and emphasis added)). These terms suggest mere failure to make a monthly payment makes the Loan immediately in default, and indeed, at least one district court has found similar mortgage terms supported, at least for purposes of a motion to dismiss, a plaintiff's claim a loan servicer treated a debt as in default. *See Kapsis,* 923 F.Supp.2d at 442; *see also Hartman,* 191 F.Supp.2d at 1044 (finding on summary judgment "[t]he terms of the contract ... are clear: plaintiff is in default when he or she fails to make a payment by its due date. Therefore, defendant's attempt to collect late payments does not fall within the § 1692a(6)(F)(iii) exception to the definition of debt collector." (alterations added)).

Bayview points to this same section of the Mortgage, arguing Bayview did not treat the Loan as in default because Bayview did not provide Plaintiffs with a notice of default or take other steps to accelerate the Loan. (*See* Reply 5). These other requirements under Section 22 are conditions for accelerating the Loan: they are not conditions for declaring the Loan in default. (*See* Mortg. § 22). Of course, the Loan must be in default before the lender may accelerate it, but Bayview does not point to any contractual provision between the parties that forecloses the possibility Bayview could treat the Loan as in default without pursuing the more drastic remedy of accelerating the Loan and declaring the entire amount of the Loan due.

It is true, as Bayview points out, the Mortgage "does not define an exact timeframe for when [P]laintiffs would be [in] default" (Reply 5 n.6 (alterations added)), but as explained, Section 22 is plausibly read to provide the Loan is in default after a mere failure to pay a monthly installment. Moreover, Bayview offers no alternative approach for defining such a timeframe.

Instead, Bayview attempts to contrast this case from cases in which courts held a debt collector treated a loan as in default at the time of transfer. (*See* Reply 6). In *Schlosser,* the debt collector explicitly, although mistakenly, asserted the plaintiffs' debt was in default in a formal notice of default, and therefore the Seventh Circuit found the debt collector was not covered by the (F)(iii) exclusion. *See* 323 F.3d at 535, 537–39. Similarly, in *Belin,* the plaintiffs alleged the debt collectors explicitly asserted the debts were in default at the time the debts were transferred, *see* 2006 WL 1992410, at *1, 3; and in *Bridge,* the plaintiffs alleged the creditor erroneously declared the debt in default and then transferred it to a loan servicer, which in turn treated the loan as in default, including by dunning plaintiffs, threatening foreclosure, and assessing late fees, *see* 681 F.3d at 357, 363.[8]

These cases provide clear examples of debt collectors treating loans as in default,

---

8. Bayview also cites *Shugart v. Ocwen Loan Servicing, LLC,* 747 F.Supp.2d 938 (S.D.Ohio 2010), in which the plaintiff alleged the loan

servicer treated his loan as if it were in default since the time of transfer of service. *See id.* at 943. The court did not directly explain

but Plaintiffs do not need to present so clear a case in the Amended Complaint—it is enough their allegations plausibly establish Bayview treated the Loan as in default. *Cf. Church*, 2014 WL 7184340, at *6 ("Assuming that the January 17 Letter taken as a whole might support an inference that [plaintiff]'s debt was not in default, that letter (considered in conjunction with the pleading's other factual allegations) also supports a reasonable inference that it was. Those inferences are resolved in [plaintiff]'s favor at the motion to dismiss stage." (alterations added)).

Finally, although not determinative, *see Fenello*, 577 Fed.Appx. at 902 (citations omitted), it is nevertheless relevant Bayview identified itself as a debt collector in the May 21 Letter, *see Kapsis*, 923 F.Supp.2d at 442 n. 3 ("[T]his is not a situation where [the loan servicer] is alleged to be a 'debt collector' under the FDCPA based on its self-identification alone; rather, the alleged self-identification is being used to buttress a plausible claim based upon the language of the contract itself." (alterations added)).

In sum, it makes no difference Plaintiffs allege the Loan was not actually in default at the time of transfer. The representations Bayview made, as alleged in the Amended Complaint and evidenced by the exhibits submitted, paint a murky picture that, when construed in the light most favorable to Plaintiffs, plausibly gives rise to the inference Bayview treated the loan as in default when it acquired the servicing rights. Accordingly, the FDCPA claims cannot be dismissed on the basis Bayview

qualifies for the (F)(iii) exclusion; to the contrary, Plaintiffs adequately plead Bayview is a debt collector.

## 2. Collection Activity

In addition to alleging Bayview is a debt collector, Plaintiffs must allege the actions of Bayview that allegedly violate the FDCPA have a nexus to debt collection activity. *See* 15 U.S.C. §§ 1692e, 1692f, 1692g(a). Sections 1692e and 1692g(a) embody this requirement in the statutory language "in connection with the collection of any debt." *Id.* § 1692e (prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt"); *id.* § 1692g(a) (requiring an "initial communication with a consumer in connection with the collection of any debt"). Section 1692f uses the term "to collect or attempt to collect any debt." *Id.* § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt").

### *Sections 1692e and 1692g(a)*

"The FDCPA does not explain what is meant by 'in connection with the collection of any debt,' and the Eleventh Circuit has not established a bright-line rule ...." *Dyer v. Select Portfolio Servicing, Inc.*, 108 F.Supp.3d 1278, 1280, No. 5:15-cv-121-Oc-30PRL, 2015 WL 3510283, at *2 (M.D.Fla. June 4, 2015) (alteration added). To fill this statutory gap, courts have developed a factor-based analysis that takes into account: "(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether

---

what these particular allegations asserted, but elsewhere in the opinion, in a different context, the court states, "Plaintiff asserts, among other things, that [the loan servicer] misapplied payments, resulting in the assessment of improper late fees, ignored Plaintiff's written

requests for corrections to his account, provided false information relating to Plaintiff's note and mortgage to the Credit Reporting Agencies, and failed to conduct necessary investigations of Plaintiff's account." *Id.* at 940 (alteration added).

it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay." *Goodson v. Bank of Am., N.A.*, 600 Fed.Appx. 422, 431 (6th Cir.2015) (citations omitted). The parties' briefing on this threshold issue focuses on the May 21 Letter.

The Eleventh Circuit's recent decision in *Pinson v. Albertelli Law Partners LLC*, 618 Fed.Appx. 551 (11th Cir.2015), provides a helpful analytic framework for explaining why the May 21 Letter was not made in connection with the collection of Plaintiffs' debt. In *Pinson*, the court addressed three letters the plaintiff claimed violated the FDCPA. The first—"the August 13 letter"—acknowledged the debt collector's receipt of the debtor's request for validation of his debt, informed the debtor the debt collector was preparing additional materials regarding paying off and reinstating the debt, and requested the debtor re-submit a document the debtor had failed to include with other documents he had earlier submitted. *See id.* at *2. The court found this letter was not an attempt to collect a debt because "[t]here was no reference to the amount owed, no implicit or explicit demand for payment, and no discussion of the repercussions if payment was not tendered." *Id.* (alteration added).

In contrast, two other letters—"the December 24 letters"—were made in connection with the collection of a debt because each made "an implicit demand for payment": "they stated the amount of the debt, described how the debt could be paid, and informed [the debtor] how he could tender payment." *Id.* (alteration added; citation omitted). Specifically, "[o]ne letter stated that fees and costs would continue to be assessed until the loan delinquency was cured, and the other stated that the amount owed would continue to increase if [the debtor] failed to reinstate the loan immediately." *Id.* (alterations added; citation omitted). Additionally, "[b]oth letters expressly indicated that they were written in an attempt to collect a debt." *Id.* (alteration added; citation omitted).

As part of its analysis, the court in *Pinson* explained "[a] communication can have more than one purpose, for example, providing information to a debtor as well [as] collecting a debt." *Id.* (alterations added; citations omitted). Plaintiffs here argue the May 21 Letter has a dual purpose: it is informational to the extent it responds to their inquiry by explaining why Bayview has not been sending account statements, but it is also an attempt to collect a debt to the extent it states the amount "currently due" as of April 1, 2014—this latter communication being a response Plaintiffs contend went beyond the scope of their inquiry. (*See* Resp. 7). Thus, similar to the August 13 informational letter in *Pinson*, the May 21 Letter provided information in response to Plaintiffs' inquiry. This alone does not make the May 21 Letter an attempt to collect a debt. *See Pinson*, 618 Fed.Appx. at 553–54; *see also Dyer*, 108 F.Supp.3d at 1282–83, 2015 WL 3510283, at *4 (letters sent in response to plaintiff's inquiry providing information about financial assistance options were not attempts to collect a debt); *Muller v. Midland Funding, LLC*, No. 14–CV–81117–KAM, 2015 WL 2412361, at *4–12 (S.D.Fla. May 20, 2015) (letter provid-

ing information about new assignee and new servicer as well as address where payments could be sent was not attempt to collect a debt).[9]

Unlike the August 13 letter in *Pinson*, however, the May 21 Letter requests Plaintiffs "[p]lease note" their account has an amount currently due. This is not an express demand for payment. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir.2012) (letter expressly demanding full and immediate payment of entire debt is a communication in connection with the collection of a debt). But, as the December 24 letters in *Pinson* demonstrated, "[a] demand for payment need not be express; there may be an implicit demand for payment where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt." *Pinson*, 618 Fed.Appx. at 553–54 (alteration added) (citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 & n. 2 (11th Cir.2014)). An additional indicator, present in the December 24 letters in *Pinson*, is some "discussion of the repercussions if payment [i]s not tendered." *Pinson*, 618 Fed.Appx. at 553–54 (alteration added).

Plaintiffs argue the May 21 Letter contains an implicit demand for payment because it states the amount of the debt currently owed and includes a disclaimer it is an attempt to collect a debt. (*See* Resp. 6–7). This is not enough. The December 24 letters in *Pinson* contained an implicit demand not merely because they stated an amount owed and included a boilerplate disclaimer, but rather because, in addition, they threatened adverse consequences in the event of further failure to pay and instructed how payment could be tendered. The May 21 Letter contains no description of how Plaintiffs can repay the amount owed; nor does it threaten any fees, costs, or other negative consequences if Plaintiffs fail to pay the amount owed.

This one sentence in the May 21 Letter is more like a statement of account. Statements of account are not debt collection activity; rather, they are normal incidents of loan servicing. *See Goodin*, 114 F.Supp.3d at 1206, 2015 WL 3866872 at *6 ("A regular bank statement sent only for informational purposes is also not an action in connection with the collection of a debt.") (citing *Helman v. Udren Law Offices, P.C.*, 85 F.Supp.3d 1319, 1327–28 (S.D.Fla.2014)); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 4:10CV00754–BRW, 2011 WL 345988, at *3 (E.D.Ark. Feb. 1, 2011) (finding "loan statements [that] merely provided information to Plaintiff about her mortgage such as payment due dates and amounts owed" were not communications in connection with debt collection (alteration added)), *aff'd* 445 Fed.Appx. 900 (8th Cir.2011).

Plaintiffs further argue the May 21 Letter set a prospective deadline for payment

---

**9.** Bayview relies on a guidance bulletin issued by the Consumer Financial Protection Bureau, CFPB Bulletin 2013–12, Implementation Guidance for Certain Mortgage Servicing Rules (Oct. 15, 2013), to argue it is protected from liability under the FDCPA because certain provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. section 2601 *et seq.*, and Regulation X, 12 C.F.R. section 1024.1 *et seq.*, required it to send the May 21 Letter in response to Plaintiffs' inquiry. (*See* Mot. 4–5; Reply 2–5). The Court declines to address this argument because (1) Plaintiffs correctly note the argument rests on a misinterpretation of the bulletin (*see* Resp. 7–8), and (2) Bayview's Motion is granted regardless of whether their argument on this point is meritless.

(*see* Resp. 7), but the May 21 Letter's "due for April 1, 2014" language is obviously not a prospective deadline. Plaintiffs also rely on the May 21 Letter's disclaimer the letter is an attempt to collect a debt and Bayview is a debt collector. (*See id.*). This disclaimer is boilerplate text that, while not irrelevant, cannot meaningfully shift the analysis. *See Goodson*, 600 Fed. Appx. at 432; *Helman*, 85 F.Supp.3d at 1325–26; *Muller*, 2015 WL 2412361, at \*5.

The May 21 Letter is more like the communications in *Goodson, Grden v. Leikin Ingber & Winters PC,* 643 F.3d 169 (6th Cir.2011), and *Parker v. Midland Credit Mgmt., Inc.*, 874 F.Supp.2d 1353 (M.D.Fla.2012), which stated balances due but did not set deadlines, threaten consequences, explain how payments could be made, or otherwise attempt to induce payment of a debt. *See Goodson*, 600 Fed. Appx. at 431–32 (also explicitly noting the disclaimer that the letter was an attempt to collect a debt could not change its conclusion); *Grden*, 643 F.3d at 173 (also finding it significant the debtor requested the statements be sent); *Parker*, 874 F.Supp.2d at 1358. The May 21 Letter is not a communication made in connection with the collection of a debt.

Plaintiffs nevertheless contend the May 21 Letter "is not the only communication or collection activity that took place between the parties." (Resp.8). First, Plaintiffs claim Bayview "never sent Plaintiffs a statement of their rights provided by 15 U.S.C. § 1692g(a)." (*Id.*). This purported failure is not a stand-alone violation under the FDCPA. The plain language of section 1692g(a) requires the alleged failure be tied to an "initial communication with a consumer in connection with the collection of any debt," so the question still remains what such a communi-

nication could be other than the May 21 Letter.

Plaintiffs additionally state Bayview "continued to accept payments from Plaintiffs." (Resp.8). Plaintiffs cite no authority establishing Bayview's mere acceptance of payments Plaintiffs themselves sent is debt collection activity actionable under the FDCPA; indeed, accepting loan payments is exactly what the FDCPA contemplates loan servicers may validly do. *See Davidson*, 2015 WL 4994733, at \*4 n. 4.

Next, Plaintiffs point to the December 4 Statement. (*See* Resp. 8). In the Amended Complaint, Plaintiffs allege, "[o]n or about December 4, 2014, Bayview, itself and on behalf of [BANA], sent Plaintiffs a statement of account for the [Loan]." (Am. Compl. ¶ 47 (alterations added)). Plaintiffs further allege, with respect to the December 4 Statement, "[t]he December 4, 2014 statement represented that $6,154.41 was due on the [Loan]." (*Id.* ¶ 48 (alterations added)). In the Response, Plaintiffs attempt to recast the December 4 Statement as making a demand for payment (*see* Resp. 8), but that is not what Plaintiffs have pleaded. The Amended Complaint indicates the December 4 Statement is a statement of account. As explained, statements of account are not actionable collection activity under the FDCPA. Plaintiffs cite *Goodin* in support of their argument the statement demanded payment, but the statements in that case found to be debt collection activity not only stated amounts owed, but also provided payment instructions and due dates for payment. *See Goodin*, 114 F.Supp.3d at 1206 & n.10. Plaintiffs do not allege the December 4 Statement contained payment instructions or deadlines, and neither party has submitted the December 4 Statement (which would have allowed for the Court's inspection of its contents).

Another potential communication is the September 11 Letter, which Bayview argues was not made in connection with the collection of a debt. (*See* Mot. 1, 4). As Bayview notes in its Reply (*see* Reply 2 n.2), Plaintiffs do not respond to this argument, and for good reason, as the September 11 Letter is not debt collection activity for many of the same reasons the May 21 Letter is not. In conclusion, without allegations sufficient to establish the "collection activity" nexus required for claims under sections 1692e and 1692g(a), Counts I, II, and IV must be dismissed.[10]

*Section 1692f*

 Bayview argues Plaintiffs do not plead the "collection activity" threshold requirement for their claim under section 1692f(1) because they "have failed to identify any correspondence in which Bayview demanded payment of the alleged 'improper charges.'" (Mot.2). Section 1692f prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (alteration added). Plaintiffs allege "[o]n March 26, 2014, and on subsequent dates, Bayview assessed the following charges to the [Loan]: [listing

charges]." (Am. Compl. ¶ 29 (alterations added)). Plaintiffs further allege these charges were not expressly authorized by the agreement creating their debt or by law. (*See id.* ¶¶ 30–31).

Section 1692f(1), together with the seven other sub-provisions listed in section 1692, are examples of conduct violative of section 1692f. *See* 15 U.S.C. § 1692f ("Without limiting the general application of the foregoing, the following conduct is a violation of this section …." (alteration added)). Section 1692f itself provides the threshold elements of a claim: any claim under section 1692f must allege a "debt collector" has used "unfair or unconscionable means *to collect or attempt to collect any debt.*" Id. (emphasis added). This "to collect or attempt to collect any debt" is the "collection activity" nexus present in most (if not all) FDCPA claims.[11]

While Plaintiffs allege Bayview assessed improper charges, Plaintiffs plead no facts showing those charges were assessed "to collect or attempt to collect any debt." Although, as explained, the terms of the Mortgage suggest these charges could relate to a default, there is still no way to read the Amended Complaint to know how these charges came to be and how Plaintiffs became aware of them. *See White,* 597 Fed.Appx. at 1020 (tying section

10. Bayview also argues Plaintiffs "fail to plead any facts showing how they were misled or deceived … in order to sufficiently state a claim under 15 U.S.C. § 1692e(10)." (Mot. 5 n.5 (alteration added)). The Court does not reach this issue, as Plaintiffs' claim under section 1692e(10) must be dismissed for the separate reason the threshold "collection activity" nexus is not adequately pleaded.

11. A question exists as to whether the "to collect or attempt to collect any debt" element under section 1692f should be interpreted in the same way as, or at least substantially

similarly to, the "in connection with the collection of any debt" element of sections 1692e and 1692g, as all elements create a "collection activity" nexus for their respective claims. An overlap has been suggested in some court opinions, *see Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 1261–62 (11th Cir.2014); *Lipscomb v. The Raddatz Law Firm, P.L.L.C.,* 109 F.Supp.3d 251, No. 14–1958(JEB), 2015 WL 3798140, at *3 (D.D.C. June 18, 2015); *Stagikas v. Saxon Mortg. Servs. Inc.,* 795 F.Supp.2d 129, 138–39 (D.Mass.2011), but the parties do not address the issue.

1692f(1) claim to correspondence sent by the alleged debt collector). As Bayview points out, the Amended Complaint fails "to identify any correspondence in which Bayview demanded payment of the alleged 'improper charges.'"[12] (Mot.2). Plaintiffs do not respond to this argument in their briefing. (*See* Reply 1). Without allegations sufficient to satisfy this threshold requirement, Plaintiffs fail to state a claim under section 1692f(1), and therefore Count III must be dismissed.[13]

### 3. Leave to Amend

Bayview seeks dismissal with prejudice. (*See* Mot. 2). "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (alteration, citation, and internal quotation marks omitted). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citation omitted).

Plaintiffs filed the Original Complaint on March 16, 2015. After a full round of briefing on Bayview's first motion to dismiss (*see* [ECF Nos. 8, 14, 15]), the Court held the May 22 Hearing. At the hearing, the Court and the parties discussed the Original Complaint's failure to describe with any specificity the other communications to which the Original Complaint referred beyond the March 27 Letter. (*See* May 22 Hr'g Tr. 6:10–25; 16:20–21; 18:9–13). The Court granted Bayview's motion, which similarly sought a dismissal with prejudice, giving Plaintiffs leave to amend.

Plaintiffs thereafter filed the Amended Complaint, but they did not file any exhibits evidencing the communications alleged in the pleading (in contrast to the Original Complaint, which included the March 27 Letter). This was not necessary, of course, but in retrospect, it could have allowed for a quicker resolution of the Motion, or even this suit. Instead, the Amended Complaint includes choice excerpts and snippets from the parties' communications—a strategy that, as it turns out, does not pay off. Bayview filed the instant Motion, prompting another full round of briefing. In the meantime, the June 30, 2015 deadline for amending the pleadings came and went. (*See* Order ... [ECF No. 11]). Bayview is now prevailing a second time on a motion to dismiss, and the discovery deadline is less than two months away. (*See id.*). At this point, it is too late and prejudicial to allow Plain-

---

12. Bayview attempts to explain, as an alternative argument, some of the alleged improper charges are actually internal accounting entries not subject to the FDCPA. (*See* Mot. 2). This explanation is not supported by the Amended Complaint or the exhibits submitted on the Motion, and so the Court declines to consider it. As for Bayview's other argument certain other charges are authorized by the terms of the Mortgage (*see id.* 2 n.2), the Court does not reach this issue either, as

Plaintiffs have failed to plead the threshold "collection activity" element of their claim.

13. Bayview argues Plaintiffs' FDCPA claims premised on the May 21 Letter should be dismissed as time-barred. (*See* Mot. 3 n.3). Plaintiffs do not address this argument (*see* Reply 2 n.2), and the Court will not either, as the FDCPA claims are dismissed for the reason they fail to state claims for relief.

tiffs another chance to fix a defective pleading. The FDCPA claims are therefore dismissed with prejudice.

### B. FCCPA Claim

■ Count V seeks relief under Florida Statute section 559.72(9), which provides, "[i]n collecting consumer debts, no person shall ... [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9) (alterations added). Plaintiffs allege subject matter jurisdiction over this state-law claim based on 28 U.S.C. section 1367. (See Am. Compl. ¶ 2). Yet, that statute authorizes courts to "decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court has dismissed all claims over which it has original jurisdiction, and it declines to exercise supplemental jurisdiction over the FCCPA claim. Count V is therefore dismissed. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (alteration added; citation omitted)).

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 29] **is GRANTED.** The Amended Complaint [ECF No. 21] **is DISMISSED.** The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot.**

**DONE AND ORDERED** in Miami, Florida, this 10th day of September, 2015.